**Affirmed and Majority and Dissenting Opinions filed June 12, 2012.**



**In The**

# Fourteenth Court of Appeals

_____

## NO. 14-10-01224-CV
_____

**ANDREW HAUT, Appellant,**

**V.**

**GREEN CAFE MANAGEMENT, INC. AND ALABAMA GREEN, LLC, Appellees.**

**On Appeal from the 270th District Court**
**Harris County**
**Trial Court Cause No. 2009-63168**

## MAJORITY OPINION

A jury found that appellant Andrew Haut breached a fiduciary duty to two companies in which he owned minority shares of stock and membership interests. The trial court found that Haut's breach of fiduciary duty was clear and serious, warranting the remedy of equitable forfeiture of Haut's stock and membership interests in the companies. We affirm.

I

Green Café Management, Inc. (GCM), is a corporation that franchises "Ruggles Green" restaurants. Alabama Green, LLC, operates a Ruggles Green restaurant at 2311 West Alabama in Houston. As franchisor, GCM sold the Ruggles Green franchise to Alabama Green. Haut owned 10% of the shares in GCM and 5% of the membership interests in Alabama Green. Haut is not an officer, director, or manager of either company.

In 2007, Federico Marques, along with Bruce Molzan and Robert Guillerman, developed the concept of the first green restaurant in Houston—one certified by the Green Restaurant Association's food-industry standards.[1] Later that year, Marques discussed the business plan for the Ruggles Green restaurant with Haut. Marques had known Haut as a business acquaintance and friend for about ten years, and over the years he had discussed other business plans and ideas with Haut.

As the Ruggles Green concept took shape, Haut increasingly participated with Marques, Molzan, and Guillerman in discussions about the structure and operation of the nascent business. Eventually, Haut began to draft legal documents, including a GCM shareholders agreement, a franchise agreement between GCM and Alabama Green, and an operating agreement for Alabama Green. Haut testified that, in addition to drafting legal documents for the companies, he performed other services such as preparing financial projections for investors, budgeting, helping acquire a suitable restaurant location, and obtaining licenses and insurance.

Marques, Molzan, and Guillerman knew Haut was in law school at the time and was not a licensed attorney. Haut testified that, as a law student, he had agreed to take a "first cut" at drafting the legal documents, but it was always understood that the final versions would be forwarded to an attorney for review. According to Haut, he, Marques, Molzan,

---

[1] Marques, who previously worked on environmental projects for Bayer Corporation and holds several patents, conceived and spearheaded the execution of the green restaurant concept. Molzan is a chef and long-time restaurant owner of Ruggles Grille in Houston. Guillerman oversees the daily operation of the Ruggles Green restaurant.

and Guillerman would meet regularly to review and discuss in detail the various provisions in the documents he prepared. Marques testified that Haut would explain any provisions they did not understand. Although Marques, Molzan, and Guillerman were experienced businessmen, none of them were lawyers. According to Marques, Haut was "very insistent" about what the law required and how things needed to be done, and so they accepted his advice.

Haut testified Marques told him that an attorney named Tom Coleman, an acquaintance of Molzan, would review the documents when they were finalized. Marques disputed this. According to Marques, although the group considered hiring Coleman at one time and met with him briefly, Coleman was never hired to represent GCM or Alabama Green. Marques also stated that Haut was critical of Coleman's competence, which influenced their decision to not hire him. Molzan testified that they could not afford to retain Coleman, and because Haut had criticized Coleman's legal skills, he agreed to have Haut do all the legal work for them in exchange for shares in the company.

Marques testified that he believed Haut could contribute to the business because he had a finance degree from the University of Pennsylvania's Wharton School, had previously run his own business, and was in law school. According to Marques, Haut said he was "very familiar" with the documents they would need to prepare, and he also had access to professors and other resources at law school to help with drafting the documents. Marques testified that he and the others trusted Haut to contribute his financial and legal knowledge to the enterprise and originally agreed to give Haut a 3% ownership interest in GCM in exchange for his efforts, including the drafting of legal documents. According to Marques, he asked Molzan and Guillerman to increase Haut's interest to 10% after Haut complained that he was doing a lot of work and needed a larger share.

Marques also testified that he, Molzan, and Guillerman were uncertain about structuring the business as a franchise, but Haut insisted that a franchise would be the legally proper way to proceed. Haut agreed that he advised the group that the business

3

should be structured as a franchise even though Marques, Molzan, and Guillerman were against this initially. Haut described the advice he gave as "business" or "financial" advice rather than legal advice. Haut acknowledged, however, that he had no prior experience in franchise law and had never operated a franchise. He explained that he gave the group financial advice based in part on his legal research, but he denied that this constituted giving legal advice. Before drafting the agreements, Haut admitted that he conducted legal research into the requirements for a uniform franchise offering circular and franchise agreement.

Haut testified that Marques never discussed paying Haut for performing legal work on behalf of Ruggles Green. He also denied that he drafted the documents in exchange for stock in the companies. Instead, Haut testified, he contributed $300 for his shares in GCM and $100 for his interest in Alabama Green. He acknowledged, however, that his interests were increased from 3% in each company to 10% in GCM and 5% in Alabama Green because he "was working so hard" to provide financial and legal services to the companies. Haut also admitted that he had no previous experience in drafting corporate documents.

Ultimately, the GCM shareholders agreement was signed in May 2008 by Molzan, Marques, Guillerman, and Haut. Molzan, Marques, and Guillerman also signed the agreement on behalf of GCM. The shareholders agreement reflected that Molzan, Marques and Guillerman would be directors of GCM, but Haut would not. The next month, the Alabama Green operating agreement was signed by Molzan, Marques, Guillerman, and Haut, as well as Randy Bower, the sole investor in the restaurant, and Jennifer McGehee, a friend of Bower's who had introduced him to Molzan. Of these, only Molzan, Marques, and Guillerman were designated managers of the company. Molzan's title was "Chief Executive Manager."

Haut acknowledged at trial that Molzan, Marques, and Guillerman wanted to make sure they had exclusive control over the operation and management of the business. To ease their concern that investors might interfere with their management, at one point Haut

4

sent an email to them stating that there were "any number of legal maneuvers available to management to stifle investor interference" and "the law is on your side." Haut denied that his statements could properly be described as legal advice. But Haut admitted that the final, signed documents did not give Marques, Molzan, and Guillerman, the directors of GCM, exclusive authority over the management of Alabama Green. Marques testified that, among other things, Haut drafted the GCM shareholders agreement and the Alabama Green operating agreement to give himself veto rights, effectively divesting GCM's directors and Alabama Green's managers of their ability to control the management of the respective companies.[2]

In November 2008, the Ruggles Green restaurant opened for business. According to Haut, however, the restaurant was losing money from its inception, and Haut believed it would soon run out of money and have to close. After about three weeks of operation, Haut contacted Bower to encourage him to replace Molzan and Guillerman as managers and take control of the restaurant.[3] Haut admitted he did this secretly without Molzan's and Guillerman's knowledge. Bower did not agree to Haut's proposal, and Bower instead contacted Molzan and Guillerman to tell them what Haut had said. The next day, according to Haut, Molzan and Guillerman gave Haut an ultimatum—either he goes or they go. Haut, who had no prior restaurant experience and was not a chef, chose to cease participating in

---

[2] The complained-of provision in the Alabama Green operating agreement reads as follows: "This Agreement represents the entire agreement between the parties. Any modifications must be in writing and signed by all parties." A similar provision is also included in the GCM shareholders agreement. Marques testified that Haut's drafting of the Shareholders Agreement was contrary to the directors' understanding that a majority of the directors would make the decisions, and it enabled Haut, a 10% shareholder, to "hold up" the owners of the remaining 90%. As an example of how control was divested, Marques explained that the operating agreement originally provided that members would receive "VIP Cards" entitling them to a specified dollar amount of restaurant credit each month. When the restaurant first opened and was losing money, everyone—including Haut—agreed to forego the food card. Later, however, Haut refused to agree in writing to forego the card even though it was detrimental to the business. (Haut later asserted in his lawsuit that the failure to issue him a VIP Card constituted a breach of contract by Alabama Green.)

[3] Under the Alabama Green franchise agreement, Molzan, Marques, and Guillerman were named managers and members, holding interests of 16 2/3%, 14 1/6%, and 11 1/6% respectively. Members Bower, Haut, and McGehee held interests of 50%, 5%, and 3% respectively. Bower and either Haut or McGehee together carried a majority interest in Alabama Green.

5

the business. According to Marques, Haut complained that the company was being mismanaged, it was going to fail, and he no longer wanted to be part of a "sinking ship." On December 20, Haut sent an email to the shareholders and members of GCM and Alabama Green informing them that he would no longer be involved in any aspect of the restaurant and also would consider selling his interests in the companies.

Bower testified that before Haut's departure, Haut would come in the restaurant and insult the employees if they were not doing things exactly as he preferred. Marques also testified that Haut was "volatile" and would yell at employees in front of customers. He described Haut as believing he was "smarter than everybody" and "very arrogant." Bower also testified that since Haut's departure, Ruggles Green was doing very well financially and was extremely well run under the management of Molzan, Marques, and Guillerman. Marques expressed the opinion that if Molzan or Guillerman had been removed as Haut wanted, the company would have failed.

In August 2009, Haut sent Marques a spreadsheet reflecting Haut's estimated valuation of his interests in GCM and Alabama Green at $603,582.63. After the parties failed to reach an agreement to buy out Haut's interests in the companies, Haut filed a lawsuit against GCM and Alabama Green seeking access to the books and records of both companies and damages for breach of contract by Alabama Green. GCM and Alabama Green answered and filed counterclaims against Haut for breach of fiduciary duty, negligence, unjust enrichment, negligent misrepresentation, fraudulent inducement, and unauthorized practice of law.

At trial, the jury was asked to consider Haut's claims against GCM and Alabama Green, as well as GCM's and Alabama Green's counterclaims, which were now limited to breach of Haut's fiduciary duty. After hearing the evidence presented, the jury found against Haut on his claims and in favor of GCM and Alabama Green. The jury found that a relationship of trust and confidence existed between Haut and the companies, and that Haut breached his fiduciary duties to the companies. The jury was not asked to assess actual

damages for the fiduciary-duty claims; instead, GCM and Alabama Green asked the trial judge to order the equitable forfeiture of Haut's stock and membership interests in the companies.

On November 10, 2010, the trial court signed a final judgment reflecting the jury's findings and reciting the following: "After considering factors relating to equitable forfeiture, the Court finds that Andrew Haut's breach of fiduciary duty to Defendants was clear and serious and as a result that the remedy of equitable forfeiture is appropriate." The trial court entered a take-nothing judgment against Haut and further ordered that he was not entitled to inspect additional books and records of the companies. Further, the trial court ordered that Haut forfeit his 10% shares of stock in GCM and his 5% membership interest in Alabama Green. Haut requested findings of fact and conclusions of law on the equitable forfeiture issue, but the trial court did not make them. This appeal followed.

## II

On appeal, Haut raises five issues: (1) because GCM and Alabama Green had no standing to assert breach-of-fiduciary-duty claims against Haut, the trial court lacked subject-matter jurisdiction; (2) Haut, a minority shareholder, owed no formal or informal fiduciary duty to the corporations as a matter of law; (3) the evidence is insufficient to support a finding that Haut breached any fiduciary duty owed to the companies; (4) the trial court's failure to file findings of fact and conclusions of law on the equitable-forfeiture issue is harmful error; and (5) the remedy of equitable forfeiture was inappropriate because Haut paid for his stock by check and forfeiture  is appropriate only in exceptional circumstances. Haut does not challenge the jury's negative findings on his claims against GCM and Alabama Green.

## A

In his first issue, Haut contends GCM and Alabama Green lack standing to assert breach-of-fiduciary-duty claims against him because the claims arising from the

shareholders and operating agreements are between the shareholders and members respectively, not the companies, and the companies have suffered no injury.

Haut argues without citation to authority that corporations "are indifferent as to how the shareholders divide rights among themselves," and therefore "any breach of fiduciary duty giving Haut more rights than co-shareholders harmed only co-shareholders," not the companies. Therefore, Haut maintains, "[d]isputes arising from the GCM shareholder agreement and the Alabama Green operating agreement must be brought by the shareholders, not the [c]ompanies."

The general rule in Texas is that a corporate shareholder has no individual cause of action for damages caused by a wrong done solely to the corporation. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990). Causes of action for injury to the property of a corporation or for impairment or destruction of its business are vested in the corporation, as distinguished from its shareholders, even though the shareholders may be harmed indirectly by a loss of earnings. *Id.* It is the nature of the wrong, whether directed against the corporation only or against the shareholder personally, not the existence of injury, which determines who may sue. *Redmon v. Griffith*, 202 S.W.3d 225, 234 (Tex. App.—Tyler 2006, pet. denied).

GCM and Alabama Green allege that they relied on Haut to perform legal services on their behalf in exchange for equity in the companies because Haut represented that he was competent to do the work based on his legal education and research. Instead, however, Haut gave legal advice and drafted the companies' documents in a manner contrary to their interests and detrimental to their operations. Further, they allege that Haut wrongfully attempted to oust the founders and managers of the companies shortly after Alabama Green's franchise opened.

We conclude that these allegations are sufficient to assert claims belonging to GCM and Alabama Green because the companies allege that Haut's wrongful acts impaired GCM and its ability to manage the Alabama Green franchise and thus directly harmed both

companies. There are no claims that Haut breached any duty owed to the shareholders or members of the companies individually. Further, GCM and Alabama Green were the parties to the franchise agreement, and GCM was a signatory to the shareholder agreement. The companies' claims include allegations directed to Haut's advice concerning the structure of the business as well as the drafting of the agreements. Therefore, GCM and Alabama Green were entitled to assert their claims directly against Haut. *See Wingate*, 795 S.W.2d at 719; *Redmon*, 202 S.W.3d at 233–34; *see also Corona v. Pilgrim's Pride Corp.,* 245 S.W.3d 75, 78–79 (Tex. App.—Texarkana 2008, pet. denied) (counterclaims for harm done to corporation belonged to corporation, not shareholder and guarantor of corporation and could not be asserted by shareholder and guarantor in creditor's suit on sworn account). We overrule Haut's first issue.

B

Before addressing Haut's remaining issues, we must address the state of the record before us.

As GCM and Alabama Green point out, Haut filed only a partial reporter's record in this court. The reporter's record consists of six volumes: one master index, three volumes of testimony, and two volumes of exhibits. The reporter's record does not include voir dire, the parties' opening statements or closing arguments, or the charge conference.

In addition, the clerk's record and reporter's record in this appeal indicate that we do not have a complete record of the testimony and evidence presented at trial. At the end of each reporter's record volume for the first two trial days (June 14–15 of 2010), the trial court states that the court is recessing for the day. At the end of the third volume for June 16, 2010, there is no such statement from the trial court. Instead, the third volume ends with counsel for appellees stating that the defendants rest their case-in-chief. Significantly, the reporter's record does not contain a statement from Haut's counsel as to whether Haut offered any evidence in a rebuttal case, nor does the record contain any statement from the trial court that the evidence is closed. We cannot discern from this

9

record, for example, whether Haut presented rebuttal evidence, whether the appellees presented surrebuttal evidence, or whether the trial court reopened the evidence to admit additional evidence on a party's motion. The volumes of trial testimony in the reporter's record are labeled "Jury Trial Excerpt," and there is no statement in the reporter's record that it contains all of the evidence offered at trial. On the contrary, the clerk's record contains the trial court's docket sheet, which states that evidence was presented on June 17, 2010, after which the jury deliberated and rendered its verdict. But, the reporter's record on appeal contains no record of any evidence offered on June 17, 2010. Indeed, the reporter's record contains no record at all regarding the trial proceedings on June 17, 2010.

Entries on docket sheets may not be used to contradict trial court orders and are not generally considered to be trial court orders or findings. *See N-S-W Corp. v. Snell*, 561 S.W.2d 798, 799 (Tex. 1977) (orig. proceeding); *Andrews v. Smith*, No. 03-05-00835-CV, 2006 WL 2785719, at \*1, n.2 (Tex. App.—Austin Sept. 29, 2006, no pet.) (mem. op.). Nonetheless, docket entries may be used by appellate courts to determine what transpired in the trial court.[4] *See Quaestor Invs., Inc. v. State of Chiapas*, 997 S.W.2d 226, 229 (Tex. 1999); *N-S-W Corp.*, 561 S.W.2d at 799; *Andrews*, 2006 WL 2785719, at \*1, n.2; *In re Lausch*, 177 S.W.3d 144, 147 & n.1 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding); *Jimenez v. Transwestern Prop. Co.*, 999 S.W.2d 125, 127 & n.2 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Pruet v. Coastal States Trading, Inc.*, 715 S.W.2d 702, 705 (Tex. App.—Houston [1st Dist.] 1986, no writ). In this case, the reporter's record and clerk's record show that the trial court's docket entries accurately describe the trial court proceedings on the first three days of trial. The clerk's record also shows that the jury deliberated and reached a verdict during the afternoon of June 17, 2010, thus confirming the accuracy of the other two items in the trial court's docket entry for that

---

[4] The case cited by our dissenting colleague does not hold to the contrary. *See post* at pp. 2–3 (citing *Rush v. Barrios*, 56 S.W.3d 88, 95–96 (Tex. App.—Houston [14th Dist.] 2001, pet. denied), in which the court held that docket entries could not be used as the trial court's findings of fact and conclusions of law, though the court stated that docket entries could be considered for other purposes).

day. Nothing in the clerk's record or reporter's record indicates that the reporter's record contains all of the trial evidence.[5] This court may rely upon the trial court's docket entry to conclude that evidence was presented on June 17, 2010. *See Quaestor Invs., Inc.*, 997 S.W.2d at 229; *N-S-W Corp.*, 561 S.W.2d at 799; *Andrews*, 2006 WL 2785719, at *1, n.2; *In re Lausch*, 177 S.W.3d at 147 & n.1; *Jimenez*, 999 S.W.2d at 127 & n.2; *Pruet*, 715 S.W.2d at 705. On the record before us, we conclude that this appeal involves a partial reporter's record that does not contain all evidence presented at trial.

If an appellant requests a partial reporter's record, the appellant must include in the request a statement of the points or issues to be presented on appeal, and the appellant will then be limited to those points or issues on appeal. Tex. R. App. P. 34.6(c)(1). It is presumed that a partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues. Tex. R. App. P. 34.6(c)(4). However, if the appellant entirely fails to file a statement of points or issues, he is not entitled to the presumption that the record is complete for appellate review purposes, and, instead, an appellate court presumes that the material missing from the reporter's record supports the trial court's judgment. *See Bennett v. Cochran,* 96 S.W.3d 227, 229–30 (Tex. 2002) (per curiam); *Mason v. Our Lady Star of the Sea Catholic Church*, 154 S.W.3d 816, 819 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Haut did not file a request for a partial reporter's record with a statement of the points or issues on appeal. *See* Tex. R. App. P. 34.6(b), (c)(1). Although the supreme court cautioned in *Bennett* that "appellate rules are designed to further the resolution of appeals on the merits," it also instructed that "litigants who ignore our rules do so at the risk of forfeiting appellate relief." 96 S.W.3d at 230. In fact, the *Bennett* court specifically stated that "[t]here is no question that, had [the appellant] completely failed to submit his

---

[5] Haut was required to make his request for the preparation of the reporter's record in writing and to file a copy of this written request with the trial court below. *See* Tex. R. App. P. 34.6(b). Apparently, Haut did not file this request in the trial court because, though the trial court clerk must include any such request in the clerk's record, the clerk's record does not contain such a request. *See* Tex. R. App. P. 34.5(a)(9).

11

statement of points or issues, Rule 34.6 would require the appellate court to affirm the trial court's judgment." *Id.* at 229 (citing Tex. R. App. P. 34.6).

Because Haut failed to follow the requirements for Rule 34.6, we must presume "that the omitted portions of the record are relevant and support the trial court's judgment" on issues in which evidentiary review is required. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990); *Mason*, 154 S.W.3d at 819; *Richards v. Schion,* 969 S.W.2d 131, 133 (Tex. App.—Houston [1st Dist.] 1998, no pet.).[6] Therefore, we analyze Haut's remaining issues in light of this presumption.

1

In his second issue, Haut contends that as a matter of law he does not owe either a formal or an informal fiduciary duty to either company. The only argument Haut makes regarding informal fiduciary duty is that there was no trial evidence that Haut had a special relationship of trust and confidence prior to and apart from the agreement made the basis of the suit. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997) (stating that, to impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to and apart from the agreement made the basis of the suit). To sustain this argument, this court would have to conclude that, considering all the trial evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support the finding, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable

---

[6] In *W & F Transportation, Inc. v. Wilhelm*, the parties agreed that the court reporter would make no record at all of the closing arguments. *See* 208 S.W.3d 32, 37, 39 (Tex. App.—Houston [14th Dist.] 2006, no pet.). In *Wilhelm,* this court noted that the reporter's record contained all of the evidence offered at trial, the trial court's pronouncement that the evidence was closed, and the entire charge conference. *See id*. at 37, 40. The *Wilhelm* court emphasized that the omitted closing arguments contained only arguments of counsel. *See id*. at 37. In the case under review, (1) there is no indication that the court reporter failed to make a record of any part of the trial proceedings or that the parties made any agreement in this regard; (2) the reporter's record and clerk's record indicate that the reporter's record does not contain all of the evidence offered at trial; (3) the reporter's record does not contain the trial court's pronouncement of the close of the evidence or any part of the charge conference; and (4) the omitted portions are not limited to only arguments of counsel, indeed the charge conference would contain any substantive objections of counsel to the charge. For these reasons, this court's opinion in *Wilhelm* is not on point.

jurors could not, the evidence at trial would not enable reasonable and fair-minded people to find that Haut had a special relationship of trust and confidence prior to and apart from the agreement made the basis of the suit. *See City of Keller v. Wilson,* 168 S.W.3d 802, 823, 827 (Tex. 2005). But because Haut failed to comply with the requirements of Rule 34.6(c) when he designated a partial record for appeal, we must presume the omitted evidence is relevant and supports the trial court's judgment on the jury's findings. *See, e.g., Bennett,* 96 S.W.3d at 229–30; *Mason,* 154 S.W.3d at 819. Applying this presumption, Haut cannot succeed in his argument under the second issue.

In addition, even if the partial record did not require us to presume that the evidence supports the jury's finding in this regard, Haut's second issue would still lack merit. The trial court's charge did not instruct the jury that a pre-existing relationship of trust and confidence was necessary for the jury to find a relationship of trust and confidence. Unless Haut timely objected to the absence of such an instruction from the jury charge, this court would review the evidence using the charge given, even if the charge does not correctly state the law. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (holding that appellate court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 283–86 (Tex. App.—Houston [14th Dist.] 2006, no. pet.) (reviewing sufficiency of evidence based on unobjected-to jury instruction and rejecting various arguments based on different legal standards). Under the charge given, Haut's only argument under his second issue lacks merit because the jury did not need to find such a pre-existing relationship under the charge given. *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86. But the only indication in the record before us that Haut voiced an objection in this regard is a document entitled "Proposed Instruction on Fiduciary Duty," contained in the clerk's record. Presuming that the document contains the signature of the trial court next to the notation "Rejected 6-17-10," our record would still be insufficient to show a timely objection. To be timely,

the objection would have had to have been made before the jury started deliberating on June 17, 2010. *See Osterberg*, 12 S.W.3d at 55; *Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 602–03 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). But we have no record of the charge conference and the document in the clerk's record does not reflect when on June 17, 2010 the notation on it was made. Under the partial record presumption resulting from the failure of the reporter's record to contain a record of the charge conference, this court would presume that Haut did not timely tender the document on June 17, 2010.[7] *See Bennett,* 96 S.W.3d at 229–30; *Mason*, 154 S.W.3d at 819. Therefore, even if the reporter's record contained all of the trial evidence, we would still review the jury's finding under the charge submitted, and Haut's only argument under his second issue would lack merit.[8] *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86.

Accordingly, we overrule Haut's second issue.

2

In his third issue, Haut asserts that the evidence is legally insufficient to support the jury's finding that Haut breached his fiduciary duty. To sustain this argument, this court would have to conclude that the evidence is legally insufficient to support the jury's finding. But because Haut failed to comply with the requirements of Rule 34.6(c) when he designated a partial record for appeal, we must presume the omitted evidence is relevant and supports the trial court's judgment on the jury's findings. *See, e.g., Bennett,* 96 S.W.3d

---

[7] In addition, the failure of the record to reflect a timely request or objection would itself be a basis to apply the charge given to the jury. *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86.

[8] Further, under the proposed instruction, the jury is told that (1) the jury must "determine . . . the existence of a fiduciary relationship between the plaintiff and defendant," (2) damage to the plaintiff is necessary for there to be a breach of fiduciary duty, (3) "an informal fiduciary duty is not lightly recognized," and (4) "to impose an informal fiduciary duty in a business transaction," there must be a pre-existing relationship of trust and confidence. Because this proposed instruction contains inaccurate statements of law and statements inappropriate for submission to the jury, it is not in substantially correct form. *See* Tex. R. Civ. P. 278; *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43 (Tex. 2007); *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 791 (Tex. 1995).

at 229–30; *Mason*, 154 S.W.3d at 819. Applying this presumption, Haut cannot succeed in his arguments under the third issue.

In addition, even if the partial record did not require us to presume that the evidence supports the jury's finding in this regard, the issue would be whether—considering all the trial evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support the finding, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not—the evidence at trial would not enable reasonable and fair-minded people to find that Haut did not show each of the following:

> a. The transactions in question were fair and equitable to [GCM or Alabama Green];
>
> b. [Haut] made reasonable use of the confidence that was placed in him by [GCM or Alabama Green] ;
>
> c. [Haut] acted in the utmost good faith and exercised the most scrupulous honesty toward [GCM and Alabama Green];
>
> d. [Haut] placed the interests of [GCM or Alabama Green] before his own, did not use the advantage of his position to gain any benefit for himself at the expense of [GCM or Alabama Green], and did not place himself in any position where his self-interest might conflict with his obligations as a fiduciary; and
>
> e. [Haut] fully and fairly disclosed all important information to [GCM or Alabama Green] concerning the transactions.

Even absent the presumption regarding the partial record, the trial evidence would be legally sufficient to support such a finding by the jury. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 20 S.W.3d 692, 699 (Tex. 2000); *Kormanik v. Seghers*, 362 S.W.3d 679, 688–89 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

Accordingly, we overrule Haut's third issue.

In his fourth issue, Haut contends the trial court's failure to file findings of fact and conclusions of law on the issue of equitable remedy is harmful error. Haut contends the trial court "needed to explain its factual and legal basis for ordering the forfeiture of [his] stock" and its failure to do so is presumed harmful. In response, GCM and Alabama Green contend that, among other things, Haut's failure to timely file a notice of past due findings of fact and conclusions of law waives his right to complain about the trial court's failure to file findings of fact and conclusions of law.

Under Texas Rule of Civil Procedure 296, when a party makes a proper and timely request for findings of fact and conclusions of law and the trial court fails to comply, harm is presumed unless the record affirmatively shows that the requesting party was not harmed by their absence. *Tenery v. Tenery,* 932 S.W.2d 29, 30 (Tex. 1996) (per curiam); *Alsenz v. Alsenz,* 101 S.W.3d 648, 652 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Error is harmful if it prevents an appellant from properly presenting a case to the appellate court. *Tenery,* 932 S.W.2d at 30; *Alsenz*, 101 S.W.3d at 652.

It is undisputed that Haut timely filed his request for findings of fact and conclusions of law. But he failed to file and serve his notice of past due findings of fact and conclusions of law within thirty days after filing his original request as required. *See* Tex. R. Civ. P. 297. Haut did not file his reminder notice until thirty-three days after he filed his original request. Therefore, Haut has waived this issue. *See Hardin v. Hardin*, 161 S.W.3d 14 (Tex. App.—Houston [14th Dist.] 2004), *judgm't vacated, op. not withdrawn*, No. 14-03-00342-CV, 2005 WL 310076 (Tex. App.—Houston [14th Dist.] Feb. 10, 2005, no pet.) (mem. op.); *see also Las Vegas Pecan & Cattle Co. v. Zavala Cnty*., 682 S.W.2d 254, 255 (Tex. 1984) (holding appellant's complaint that trial court failed to file findings of fact and conclusions of law was waived when appellant filed reminder notice four days after deadline provided in earlier version of rule). We overrule Haut's fourth issue.

In his fifth issue, Haut contends the equitable remedy of forfeiture of his interests in the two companies is inappropriate as a matter of law because Haut paid $100 for his interest in Alabama Green and $300 for his stock in GCM and because forfeiture is only applied in exceptional circumstances. Under this issue, Haut argues that (1) no legal standard has been established for determining whether fee forfeiture should be awarded against a fiduciary who is a minority shareholder a company; (2) Haut paid $100 for his interest in Alabama Green and $300 for his stock in GCM; and (3) the trial court erred to the extent it concluded that Haut's breach of fiduciary duty was clear and serious and that equitable forfeiture of his interests in Alabama Green and GCM was appropriate.

The Supreme Court of Texas has made it clear that the legal standard from *Burrow v. Arce* applies, even to situations in which the fiduciary is not an attorney. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010) (citing *Burrow* for the proposition that "even if a fiduciary does not obtain a benefit from a third party by violating his duty, a fiduciary may be required to forfeit the right to compensation for the fiduciary's work"); *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999) (stating that "a person who renders service to another in a relationship of trust may be denied compensation for his service if he breaches that trust").

Evidence of Haut's payment of $100 in connection with receipt of his interests in Alabama Green and $300 in connection with receipt of his stock in GCM does not preclude the trial court, as a matter of law, from determining under the *Burrow* legal standard that Haut's conduct was a clear and serious breach of duty and that Haut's interests in these companies should be forfeited. *See Burrow*, 997 S.W.2d at 237–46.

On this partial record, we must presume the omitted portions of the record support the trial court's determination that Haut's breaches of fiduciary duty to GCM and Alabama Green were clear and serious based on the relevant factors and that the remedy of equitable forfeiture was warranted on the facts presented. *See, e.g., Bennett,* 96 S.W.3d at 229–30;

*Mason*, 154 S.W.3d at 819; *Burrow*, 997 S.W.2d at 237–46. Even absent the presumption regarding the partial record, we would still conclude that the trial court did not err in making these determinations. *See Burrow*, 997 S.W.2d at 237–46; *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 22–23 (Tex. App.—Tyler 2000, pet. denied). Accordingly, we overrule Haut's fifth issue.

* * *

We overrule Haut's issues and affirm the trial court's judgment.

/s/    Jeffrey V. Brown
        Justice

Panel consists of Justices Frost, Brown, and Christopher. (Christopher, J., Dissenting).