**Reversed and Remanded and Majority and Dissenting Opinions filed April 3, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00006-CV

## IN THE INTEREST OF K.D.H., A CHILD

**On Appeal from the 257th District Court
Harris County, Texas
Trial Court Cause No. 2012-06890**

## D I S S E N T I N G   O P I N I O N

The Legislature, under section 102.004(a),[1] allows certain nonparent relatives to file suit requesting managing conservatorship of a child upon "satisfactory proof to the court" that the requisites for standing thereunder have been met.[2] The majority, in essence, has construed this language to mean

---

[1] All section references are to the Texas Family Code.

[2] The relevant portion of the statute states:

In addition to the general standing to file suit . . . a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to

"satisfactory proof to the appellate court" rather than "satisfactory proof to the [trial] court." For this reason, I respectfully dissent.

I disagree with the majority's articulation of the standard and scope of review required to review the judge's evaluation of the proof in this context. Applying in this non-Department case[3] what I believe to be the proper standard of review—legal sufficiency of the evidence—and scope of review—implying the findings necessary to support the court's judgment that Grandmother did not present satisfactory proof to the court—I would affirm.

The majority is correct and understated in saying that the Legislature has drafted an "unusual" provision in section 102.004(a). The statute employs a familiar term, "standing," but requires a different method of demonstrating standing than that already engrained in our jurisprudence. Standing usually requires a showing of particularized harm and typically is satisfied by pleading certain jurisdictional facts.[4] *See Bliss & Glennon Inc. v. Ashley*, 01-12-01177-CV, 2014 WL 47758, at *8 (Tex. App.—Houston [1st Dist.] Jan. 7, 2014, no. pet. h.). In the Family Code section at issue, however, merely pleading jurisdictional facts is not enough to demonstrate standing; the Legislature also requires an unusual quantum and quality of evidence to be adduced: "satisfactory proof to the court." *See* Tex. Fam. Code § 102.004(a).

"Satisfactory proof to the court" does not comport with any evidentiary

---

the court that . . . the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development[.]

Tex. Fam. Code § 102.004(a)(1).

[3] The majority incorrectly states that the Department "placed" the Child with Grandmother or "returned" the Child to Mother, as discussed *infra*.

[4] As the Majority explains, "Ordinarily, standing is based on the existence of certain facts, not the existence of certain proof." Maj. Op. at III.A.

standard in general use elsewhere in the Family Code or other Texas statutes.[5] *See, e.g.*, Tex. Fam. Code § 105.005 ("Except as otherwise provided by this title, the court's findings shall be based on a preponderance of the evidence."); *id.* § 161.001 (requiring "clear and convincing evidence" to terminate parent-child relationships). In applying section 102.004(a), are we to equate "satisfactory proof" with a preponderance of the evidence or is "satisfactory proof" a type of finding "otherwise provided by" the Family Code, requiring its own evidentiary standard?

## I.     What is Satisfactory Proof to the Court?

Although I agree with the majority that the word "satisfactory," *i.e.,* adequate,[6] can be construed based on its ordinary meaning, I disagree that its ordinary meaning is "whether there is a genuine fact issue"—in other words, more than a scintilla. Maj. Op. at III.A.; *see Kamat v. Prakash*, No. 14-11-00661-CV, 2014 WL 294497, at *6 (Tex. App.—Houston [14th Dist.] Jan. 28, 2014, no. pet. h.) (citing *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009)) (noting appellate court must overrule legal sufficiency challenge to finding of fact when "more than a scintilla of competent evidence supports it"). In the context of a grandparent's right to interfere with a parent-child relationship, merely "more than a scintilla" is neither adequate nor satisfactory.

Sister courts have somewhat conflated the definition and the evidentiary standard required under section 102.004(a) by defining "satisfactory proof" as a "preponderance of the evidence." *See Mauldin v. Clements*, No. 01-12-00016-CV,

---

[5] The term also is used in section 102.004(b). Research has revealed only one other Texas statute using the term, regarding certain reimbursement claims. *See Tex. Estates Code* § 1155.102.

[6] *See The American Heritage Dictionary* 1092 (2d coll. ed. 1991).

2014 WL 421292, at *14 (Tex. App.—Houston [1st Dist.] Feb. 4, 2014, no. pet. h.) ("In a family law case, when the petitioner is statutorily required to establish standing with 'satisfactory proof,' the evidentiary standard is preponderance of the evidence."); *Medrano v. Zapata*, No. 03-12-00131-CV, 2013 WL 6921500, at *7 (Tex. App.—Austin Dec. 31, 2013, no. pet. h.) (mem. op.) ("'Satisfactory proof to the court' . . . denotes proof by a preponderance of the evidence."); *In re Hogard*, No. 10-13-00246-CV, 2013 WL 5603853, at *2 (Tex. App.—Waco Oct. 10, 2013, no pet.) (mem. op.) (same); *In re C.A.H.*, No. 11-10-00040-CV, 2011 WL 947082, at *2 (Tex. App.—Eastland Mar. 3, 2011, no pet.) (mem. op.) (same); *In re N.L.D.*, 344 S.W.3d 33, 38 (Tex. App.—Texarkana 2011, no pet.) (requiring threshold finding based on a preponderance of the evidence); *Von Behren v. Von Behren*, 800 S.W.2d 919, 921 (Tex. App.—San Antonio, 1990, writ denied) (applying preponderance of the evidence standard).[7] Until the Legislature or the Texas Supreme Court clarifies whether section 102.004(a)(1) created a new evidentiary standard, I would follow our sister courts and require proof by a preponderance of the evidence of Grandmother's standing. Further, I would imply all findings necessary to support the trial judge's determination, as discussed below. After all, the Legislature stated the proof should be "satisfactory . . . *to the court*." Tex. Fam. Code § 102.004(a) (emphasis added).

## II. Standards of Review

### A. Jurisdictional Facts

I agree with the majority that, generally, whether a plaintiff has pleaded sufficient facts to establish standing is a threshold issue that we review de novo.

---

[7] "The term 'preponderance of the evidence' means the greater weight of the credible evidence admitted in [the] case." Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: General Negligence & Intentional Personal Torts* PJC 1.3 (2010).

4

Maj. Op. at III.B.; *see Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *see also Jansen v. Fitzpatrick*, 14 S.W.3d 426, 431 (Tex. App.—Houston [14th Dist.] 2000, no pet.). When standing has been conferred by statute, however, the statute itself should serve as the proper framework for the standing analysis. *In re Smith*, 260 S.W.3d 568, 572 (Tex. App.—Houston [14th Dist.] 2008, no pet.). If a petitioner fails to establish proper standing, then the trial court must dismiss the suit. *Compton v. Pfannenstiel*, No. 01-13-00062-CV, 2014 WL 576175, at *2 (Tex. App.—Houston [1st Dist.] Feb. 13, 2014, no. pet. h.).

Under section 102.004(a)(1), Grandmother was required to plead the following jurisdictional facts: this is an original suit requesting managing conservatorship, she is a grandparent, and she has proof (pleadings not being proof) of the requisite facts. The majority correctly notes that these jurisdictional facts *as pleaded* should be construed liberally in favor of the pleader. *See Miranda*, 133 S.W.3d at 226; *see also N.L.D.*, 344 S.W.33 at 37-38 (applying *Miranda* standard to pleaded facts of consanguinity under 102.004(a) of three different petitioners and finding two did not satisfy the statute and, therefore, did not have standing). I disagree, however, that it would be "unreasonable" to construe 102.004(a)(1) so that the trial court is the fact-finder who makes credibility determinations thereunder, as the majority holds. Maj. Op. at III.A. I would hold the trial court's finding that Grandmother's proof was not "satisfactory" should be reviewed as we review other trial-level fact-findings.

### B. Satisfactory Proof to the Court

The Legislature places an additional burden on the party seeking to demonstrate standing under section 102.004(a) beyond sufficient pleadings: to

5

present "satisfactory proof to the court" of the requisites thereunder.[8]  I believe that, by doing so, the Legislature intended for the trial court to serve as a gatekeeper, limiting the access of nonparent relatives to file original suits to determine conservatorship.  *See Medrano*, 2013 WL 6921500, at *6 ("[T]he relationship of grandparent to child is not alone considered sufficient to confer standing to bring a suit for conservatorship—to the contrary, chapter 102 embodies a strong public policy that grandparents should 'not [be] entitled to disrupt the child's family life and initiate suits for managing conservatorship except in limited circumstances.'" (citing *Whitworth v. Whitworth*, 222 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2007, no pet.))); *see also infra* III. (discussion regarding grandparental access).

I would defer to the trial court's assessment of whether the proof presented to it by Grandmother was satisfactory, considering the evidence in a light favorable to the trial court's ruling and implying findings to support the judgment.  *See Compton,* 2014 WL 576175, at *2; *see also N.L.D.*, 344 S.W.3d at 38 (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).  The majority acknowledges that the Legislature intended the trial court to perform a gatekeeper function (Maj. Op. at III.A.), but then opens wide the gate and throws away the key.[9]  Despite the unambiguous language used in the statute, the majority is uncomfortable with a construct that "casts the trial court as the factfinder" regarding satisfactory proof to the court because it makes appellate review

---

[8] Therefore, I disagree with the majority that, in this circumstance, merely pleading a proper basis for standing is sufficient.

[9] The traditional standard of appellate review for decisions of the trial court as an evidentiary gatekeeper is an abuse of discretion.  *See, e.g., Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 262 (Tex. 2012) (applying abuse of discretion standard to trial court's gatekeeping function to exclude irrelevant and unreliable expert evidence); *see also E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

6

awkward (*see* Maj. Op. at III.A.).[10]   Perhaps so, but we can no more rewrite the statute to make our job easier than we can to alter the outcome of an opinion.[11]

Here, the trial court held a hearing where evidence was presented.  Because the trial court did not make findings of fact and conclusions of law, we must imply that it found Grandmother's evidence of standing under section 102.004(a)(1) to be unsatisfactory.  *See Mauldin*, 2014 WL 421292, at *14; *see also Compton,* 2014 WL 576175, at *2.  I would review the evidence in a light favorable to the trial court's findings, drawing reasonable inferences in its favor and presuming the court resolved any evidentiary conflicts in a manner supporting its implied findings.  *Medrano*, 2013 WL 6921500, at *8 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)) ("[T]rial-level fact-finders 'are the sole judges

---

[10] In fact, this court previously has deferred to the trial court as fact-finder in the standing analysis under section 102.004(a).  *See In re Vogel*, 261 S.W.3d 917, 922 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Given these facts, we conclude that the trial court reasonably could have found that [the child's] present circumstances . . . would significantly impair his physical health or emotional development.").

[11] The following courts have applied a scope of review deferential to the trial court's fact-finding to analyze standing under section 102.004(a):  the First, Third, Fourth, Sixth, and Seventh Courts of Appeals.  *See, e.g., Compton*, 2014 WL 576175, at *2 ("In our review, we consider the evidence in a light favorable to the trial court's ruling."); *Medrano*, 2013 WL 6921500, at *8 ("We are likewise required to view the evidence in the light favorable to the district court's findings, drawing reasonable inferences in their favor, and presuming that the court resolved any evidentiary conflicts in a manner supporting its findings."); *N.L.D.*, 412 S.W.3d at 814 (applying abuse of discretion standard); *In re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd) ("We review the entire record to determine if the trial court's implied findings are supported by any evidence."); *In re Burrows*, No. 07-98-0178-CV, 1999 WL 270176, at *2 (Tex. App.—Amarillo May 4, 1999, no pet.) ("[I]n a case such as this in which the trial court has made findings of fact and those findings are challenged on appeal, they are reviewed under the same standards as those used to review jury findings").  The Fifth Court of Appeals has also deferred to the trial court's fact-finding in a similar context.  *See In re M.P.B.*, 257 S.W.3d 804, 808 (Tex. App.—Dallas 2008, no pet.) ("When, as here, the trial court makes no separate findings of fact or conclusions of law, we must draw every reasonable inference supported by the record in favor of the trial court's judgment." (finding grandparental standing under Texas Family Code section 102.003(9) (conferring standing on "a person . . . who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition"))).

of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary.'"). I would apply this scope of review to determine whether the proof presented was such that a reasonable fact-finder could conclude that Grandmother did not establish that the "order requested was necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." *See* Tex. Fam. Code § 102.004(a)(1); *see also Medrano*, 2013 WL 6921500, at *9.

### III. Grandparental Access

In 2000, the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57 (2000), precipitated a major shift in the way courts were to apply statutes allowing for grandparental access to a grandchild. *Sampson & Tindall's Texas Family Code Annotated* 615 (Aug. 2013 ed.) (*Sampson & Tindall*). *Troxel* reaffirmed a long line of cases holding that parents have a fundamental constitutional right to have and raise children without interference from the State except in extraordinary circumstances. *Id.* In 2004, the Attorney General of Texas issued an opinion concluding that Texas statutes in effect at the time granting grandparental access to grandchildren could be applied constitutionally, but the principles expressed in *Troxel* must be observed. *Id.* (citing Tex. Att'y Gen. Op. No. GA-0260 (2004)). The attorney general's opinion summarized "[t]he message of *Troxel*" as follows: "[S]tate statutes that infringe upon a parent's right to control the care and custody of his or her children are subject to strict scrutiny." Tex. Att'y Gen. Op. No. GA-0260.

Subsequently, the Legislature raised the bar for grandparental access to grandchildren, requiring evidence that the denial of access "would significantly impair the child's physical health or emotional well-being." Fam. Code § 153.432;

8

*see also Sampson & Tindall* 615. The trial court must make a preliminary determination that the facts stated would, if true, demonstrate the truth of that allegation. Fam. Code § 153.432; *see also Sampson & Tindall* 615. Even so, the trial court retains discretion to order or refuse to order access and possession. Fam. Code § 153.433; *see also Sampson & Tindall* 615.

The Legislature similarly amended section 102.004(a)(1) to mirror the language used in section 153.432, requiring the grandparent to present "satisfactory proof to the court" that "the child's present circumstances would significantly impair the child's physical health or emotional development."[12] Accordingly, the statute reflects a policy by the Legislature to follow the dictates of *Troxel*: that "there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." 530 U.S. at 68-69.

In that connection, the Legislature provided a mechanism for the trial court to be a gatekeeper to safeguard the fundamental constitutional right of parents to make decisions regarding the rearing of their own children. To protect this vital interest, the gate through which grandparents obtain standing to request managing conservatorship must be narrow. In light of these principles, the basis for standing at issue here is intended to restrict nonparent relatives from bringing a custody lawsuit except in "certain extreme circumstances": it is not enough to show the child would be "better off" with the relative seeking custody. *See Medrano*, 2013 WL 6921500, at *6.

---

[12] Prior to that amendment, the standard for grandparental standing was lower. Instead of being required to show "significant impairment" of the child's "physical health or emotional development," the grandparent had to show only "a serious question" concerning the child's "physical health or welfare." Conference Committee Report, Tex. H.B. 260, at 2, 79th Leg., R.S. (3d printing May 28, 2005).

9

Long before *Troxel* was decided, the Legislature had extensively amended the Family Code to permit grandparents and others to bring an original suit affecting the parent-child relationship under only limited, "specific factual circumstances." Hearing on Tex. S.B. 455 Before the Senate Jurisprudence Comm., 69th Leg., R.S. (Mar. 5, 1985) (statement of Professor John S. Sampson on behalf of State Bar of Texas Family Law Section). That amendment created "a pretty severe test for grandparents . . . to seek custody" and was "balanced out" to "prevent . . . grandparents from bringing a suit for custody every time they disagree with the way their daughter or daughter-in-law is raising a child." *Id.* The amendment was intended as a compromise "to strike a balance between situations where people legitimately ought to be brought in and heard before the court while at the same time not opening the courthouse doors so that family autonomy or family privacy can be invaded just at the will or whim of others." *Id.* Accordingly, the trial court was given the discretion to decide whether grandparents have standing under the "specific factual circumstances" provided for in the amendment.[13]

Grandmother's claims are created by statute—namely, the Family Code— and Grandmother's standing to assert them is likewise governed by that Code's "comprehensive statutory framework for standing in the context of suits involving the parent-child relationship." *See Jasek v. Tex. Dept. of Family & Protective Servs.*, 348 S.W.3d 523, 528 (Tex. App.—Austin 2011, no pet.) (quoting *In re H.G.,* 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, pet. denied)).

---

[13] The 1985 amendment for the first time allowed grandparents or "any other person deemed by the court to have had substantial past contact with the child" to bring an original suit affecting the parent-child relationship upon "satisfactory proof to the court" that, as relevant here, "the child's environment with the parent or parents, the managing conservator, or the custodian may endanger the child's physical health or significantly impair the child's emotional development." *See* Senate Committee Report, Tex. S.B. 455, at 1, 69th Leg., R.S. (Mar. 13, 1985).

Accordingly, Grandmother had the burden of establishing her standing within the prescribed parameters of that statutory language. *See id.; see also Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex. 1984). Grandmother has relied on one of the "limited circumstances" in which grandparents may have standing under chapter 102, which are intended to restrict grandparental standing to "certain extreme circumstances." *See Medrano*, 2013 WL 6921500, at *6; *see also Von Behren v. Von Behren,* 800 S.W.2d 919, 921 (Tex. App.—San Antonio 1990, writ denied) (observing, with reference to an earlier version of this standing limitation, that it is "'designed to strike a balance between those grandparents . . . who undertake a rescue mission and those who are just out to do a little officious intermeddling to correct the 'unsatisfactory' childrearing methods of the younger generation.'" (quoting John J. Sampson, Texas Family Code & Commentary, 17 Tex. Tech. L. Rev. 1045, 1073 (1986))).

## IV. The Rest of the Story: The Proof before the Trial Court

The record contains Grandmother's brief, Grandmother's selections from the clerk's record, and the reporter's record from the hearing on the motion to dismiss where Grandmother was "called" as a witness. Both parents also appeared pro se at the hearing and spoke with the judge. *See Medrano*, 2013 WL 6921500, at *5 n.9 (considering standing arguments made to trial court at hearing). It is unclear whether the parents were sworn as witnesses at the hearing. The trial court stated, "Everyone who's going to testify in this matter, please raise your right hand." This statement is followed in the record by the notation "(Witnesses sworn)," which indicates one or both parents were sworn in as witnesses along with appellant. The majority considers the statements by the pro se parties to be non-evidentiary, ignoring the realities of a busy trial court where not every witness sits in the

11

witness chair.[14] In considering the evidence in a light favorable to the trial court's ruling and implying findings to support the judgment, I would presume that the trial court took these statements into account in its determination of standing.

In response to the testimony adduced at the hearing and recited in the majority opinion, Maj. Op. at I. and III.B., the trial court expressed concern that Grandmother had presented no evidence that the Child's *present* circumstances significantly impaired her health or emotional development.[15] *See Medrano*, 2013 WL 6921500, at *7 ("'Present circumstances' . . . refer[s] to the state of affairs that existed as of the date [the relative nonparent] file[s] suit.").[16] The trial court noted that Grandmother's original petition did not even allege standing under 102.004(a)(1).[17] It is undisputed that, when Grandmother filed suit, the Child was

---

[14] The trial judge has broad discretion to manage trial proceedings. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240-41 (Tex. 2001). This authority is set forth, in part, in the Texas Rules of Evidence: "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence . . . ." Tex. R. Evid. 611(a). A trial court must have leeway to manage its courtroom in the most expedient manner. *See Francis*, 46 S.W.3d at 241. Moreover, in a bench trial, it is the trial judge who observes the appearance and demeanor of the witnesses, evaluates the personality of the contending claimants, and assesses the needs of the child in a suit affecting the parent-child relationship. *In re J.G.*, 412 S.W.3d 83, 94 (Tex. App.—Fort Worth 2013, no pet.) (Dauphinot, J., dissenting).

At the hearing, the trial court asked the Father to speak after Grandmother completed her testimony. It is unclear whether the court intended the Father's comments at that point to be testimony or argument. The Father had no pending motion.

THE COURT: Anything else you want to say, sir?

[Father]: Yes, ma'am. A lot of what she said is inaccurate. I don't want to go back and pick all the details . . . . Like I said, the baby's well cared for. She's not in any kind of danger. She's well cared for and me and her mother are getting along swimmingly. There's a lot of love in the house and everything is fine at this point in time.

[15] The Father stated, "The current conditions that my child's living in do not impair her development. She's not in any kind of danger. She's well taken care of. She's fed. She's cared for. She has all the affection and love she needs or wants."

[16] Grandmother filed suit February 2, 2012.

[17] Grandmother initially alleged standing based on voluntary relinquishment by the

12

living with her parents away from Grandmother's residence. The trial court also noted that the Department had not filed a case against the parents. Grandmother's counsel told the trial court the Department said that the Mother had "done her services" under the agreed plan.

When, as here, there is no explicit statement by the trial judge that she was taking notice of the court's file, we presume that the trial court took judicial notice of "what has previously taken place in the case tried before it, and the parties are not required to prove facts that the trial court judicially knows." *See In re A.W.B.*, No. 14-11-00926-CV, 2012 WL 1048640, at *3 (Tex. App.—Houston [14th Dist.] Mar. 27, 2012, no pet.) (mem. op.); *see also In re J.J.C*, 302 S.W.3d 436, 446 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). The record is unclear as to the extent of the Department's involvement with K.D.H. The Department was originally sued by Grandmother as a defendant, but we have none of its pleadings in our record. However, we do know from the "Report to the Court" filed by the Department and in the clerk's record that the Department, as of February 28, 2012, recommended "continued" placement of the child with the Mother.

The Report further stated:

- The Department has not been named temporary managing conservator in this suit.[18]

- Mother was merely "asked" to participate in various programs and agreed to do so; however, there is no order in the record.

parents and her "actual care, custody and possession" of the Child since October 5, 2011, which is less than the required six months. Grandmother added allegations under section 102.004(a)(1) in a supplemental and amended petition filed June 13, 2012.

[18] The report does not reflect that anyone other than the parents ever was named managing conservator of the Child; therefore, it is not accurate to say the Child was "returned" to the Mother or to imply that the Child was "placed" with anyone else, although the Department approved the Child's living arrangement with the Mother at Grandmother's residence and referred to Grandmother and her husband as "voluntary caregivers."

13

- Mother was observed in family visitation by the Department on at least five occasions.

Moreover, according to the docket sheet in the record, the parties appeared before the trial court on five other occasions before the hearing on the motion to dismiss.[19] The trial court was entitled to take into account that case history in assessing the credibility of the witnesses and making its determination as to standing. *See In re A.W.B.*, 2012 WL 1048640, at *3.

## V. Response to Majority's *Sua Sponte* Arguments

The majority suggests that because Grandmother paid a jury fee, she had a constitutional right to a jury trial (and, by extension, a constitutional right to have a jury decide whether she presented satisfactory proof). Despite the fact that Grandmother did not make this argument, the majority also sidesteps whether Grandmother had standing to seek a jury trial in the first place. An appellate court may *sua sponte* determine it has no jurisdiction, because without jurisdiction, it cannot act; however, it may not *sua sponte* create jurisdiction for a party. *See Texaco, Inc. v. Shouse*, 877 S.W.2d 8, 11 (Tex. App.—El Paso 1994, no writ) (acknowledging that court of appeals is required *sua sponte* to determine whether it has jurisdiction but may not create jurisdiction by consent or stipulation of the parties or waiver). A party without standing does not have a constitutional right to maintain a lawsuit, whether tried by a jury or the court. Also, since section 102.004(a) clearly places the fact-finding duties with the trial court, the majority is implying the statute is unconstitutional. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 234 n.4 (Tex. 2011) ("[W]e only decide constitutional questions when

---

[19] Entries on docket sheets may not be used to contradict trial court orders and are not generally considered to be trial court orders or findings. *Haut v. Green Cafe Mgmt., Inc.*, 376 S.W.3d 171, 178-79 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Regardless, docket entries may be used by appellate courts to determine what transpired in the trial court. *Id.*

we cannot resolve issues on other grounds.").

The majority also argues on Grandmother's behalf that the merits of Grandmother's case are implicated in the Mother's standing challenge (to support her request for appointment as managing conservator, Grandmother pleads, among other complaints, that the Mother's access to the Child would endanger the Child's physical health or emotional welfare). The majority concludes that the trial court cannot rule on the issue of satisfactory proof to the court, therefore, unless the evidence is conclusive, citing *Miranda*. *See* 133 S.W.3d at 228. If there is a fact question, the majority says, the issue must go to a jury. *See* Maj. Op. at III.A. However, as set forth above, when standing has been conferred by statute, it is the statute that creates the proper framework for a standing analysis. *In re Smith*, 260 S.W.3d at 572. Standing under section 102.004 arises from the "comprehensive statutory framework for standing in the context of suits involving the parent-child relationship." *Medrano*, 2013 WL 6921500, at *5. Moreover, standing with regard to suits affecting the parent child relationship that implicate the "[fundamental] interest of parents in the care, custody, and control of their children" must be analyzed in accordance with *Troxel*. *See* 530 U.S. at 65-66; *see also In re Russell*, 321 S.W.3d 846, 859 (Tex. App.—Fort Worth 2010, no pet.) ("We construe the standing statutes in a manner consistent with the constitutional principles stated in *Troxel*.").

I disagree with the majority that the trial judge is bound by *Miranda* to abstain when the statute explicitly requires the trial court to act.

## VI. Conclusion

In implying the findings necessary to support the trial court's determination, I would conclude that a reasonable fact-finder could have found that Grandmother did not present by a preponderance of the evidence "proof satisfactory to the court"

15

that the Child's present circumstances as of February 2, 2012 would significantly impair the Child's physical health or emotional development.[20]  *See* Tex. Fam. Code § 102.004(a)(1).  As the trial court noted at the hearing, Grandmother presented evidence only of the child's past circumstances, and the trial court was entitled to consider the Department's recommendation that the Mother maintain custody, and indeed, as the trial court noted, the Department's decision not to pursue a case against the parents.


/s/    Martha Hill Jamison
Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jamison (Frost, C.J., majority).

---

[20] Even applying the standard articulated by the majority, I would find Grandmother failed to create an issue of material fact of *present* circumstances *significantly* impairing the Child's health.  Present means as of the date of filing.  *Medrano*, 2013 WL 6921500, at *7.  Moreover, Grandmother was required to present evidence of "specific, identifiable behavior or conduct of the parent[s]," as shown by "specific acts or omissions," and evidence that such acts or omissions "will probably cause that harm."  *See S.M.D.*, 329 S.W.3d at 16.  Grandmother presented no evidence of acts or omissions by Mother or of present circumstances that would harm the Child.  In fact, Grandmother testified that the Child had not been hurt during the Mother and Father's interactions with the Child in the Grandmother's home.