ACCEPTED
13-13-00717-CV
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
1/14/2015 9:14:59 PM
DORIAN RAMIREZ
CLERK

# No. 13-13-00717-CV

_____

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
1/14/2015 9:14:59 PM
DORIAN E. RAMIREZ
Clerk

IN THE COURT OF APPEALS

FOR THE THIRTEENTH DISTRICT OF TEXAS

_____

DOUGLAS MICHAEL BULTHUIS,

*Appellant*

V.

JOSE JUAN (J.J.) AVILA,

*Appellee*

_____

On Appeal from the 370th Judicial District Court of Hidalgo County, Texas
Trial Court Cause No. C-620-07-G
Honorable Noe Gonzalez, Judge Presiding

_____

### APPELLEE'S BRIEF

_____

Francisco Rene Villarreal
State Bar No. 00789706
GARCIA & VILLARREAL, LLP
4311 North McColl Road
McAllen, Texas 78502
(956) 630-0081
(956) 630-3631 (fax)
panchov@gvlaw.net

R. Russell Hollenbeck
State Bar No. 00790901
Natasha N. Taylor
State Bar No. 24071117
WRIGHT & CLOSE, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (fax)
hollenbeck@wrightclose.com
taylor@wrightclose.com

*Attorneys for Appellee, Jose Avila*

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**Appellant**:

Douglas Michael Bulthuis

**Counsel for Appellant:**

Ronald G. Hole
HOLE & ALVAREZ, L.L.P.
612 W. Nolana Loop, Ste. 370
P.O. Box 720547
McAllen, Texas 78504-0547
(956) 631-2891
(956) 631-2415 (fax)

**Appellee**:

Jose Juan (J.J.) Avila

**Counsel for Appellee:**

Francisco Rene Villarreal
GARCIA & VILLARREAL, L.L.P.
4311 North McColl Road
McAllen, Texas 78502
(956) 630-0081
(956) 630-3631 (fax)
panchov@gvlaw.net

R. Russell Hollenbeck
Natasha N. Taylor
WRIGHT & CLOSE, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (fax)
hollenbeck@wrightclose.com
taylor@wrightclose.com

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF CONTENTS ................................................................................. iii

INDEX OF AUTHORITIES ............................................................................. v

RECORD CITATIONS ................................................................................. viii

STATEMENT OF THE CASE ........................................................................ ix

STATEMENT REGARDING ORAL ARGUMENT ........................................ x

ISSUES PRESENTED .................................................................................... xi

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF FACTS ............................................................................... 2

    A.    The parties' claims and resulting lawsuit. ............................ 2

    B.    A jury finds for Bulthuis and awards him $850,000 in damages. ....................................................................................... 3

    C.    The trial court concludes the evidence was legally insufficient to support the jury's damage awards. ............... 5

SUMMARY OF THE ARGUMENT ................................................................ 7

ARGUMENT ................................................................................................... 8

I.    This Court must presume the omitted portions of the record support the trial court's judgment and must affirm that judgment. ................................................................................... 8

II.    The trial court properly rendered a judgment notwithstanding the verdict on Bulthuis's damages claims. .................................. 12

    A.    Bulthuis cannot satisfy his burden to show the trial court erred in rendering a JNOV. ............................................. 13

B.      Bulthuis's claim that the trial court failed to consider the entire trial record not only confuses the rules but is plainly incorrect. ................................................................. 15

C.      The evidence was legally insufficient to support the jury's actual damages findings. ........................................... 17

     1.     Juries do not have unfettered discretion to award non-economic damages, even in defamation cases. ................. 17

     2.     There is no evidence to support the jury's findings of mental anguish and loss of reputation damages. .................. 20

III.    The trial court properly disregarded the jury's award of exemplary damages because Bulthuis did not recover actual damages in this matter. ................................................................. 24

IV.    The trial court properly declined to tax Bulthuis's court costs against Avila because Bulthuis recovered only nominal damages. ................................................................................. 25

CONCLUSION AND PRAYER ........................................................... 26

CERTIFICATE OF COMPLIANCE ..................................................... 27

CERTIFICATE OF SERVICE .............................................................. 27

APPENDIX ........................................................................................... 28

# INDEX OF AUTHORITIES

Page

**Cases**

*Appleton v. Appleton*, 76 S.W.3d 78 (Tex. App.—Houston [14th Dist.] 2002, no pet.)................................................................................14

*Bennett v. Cochran*, 96 S.W.3d 227 (Tex. 2002)....................................1, 9

*Bennett v. Reynolds*, 315 S.W.3d 867 (Tex. 2010)...................................25

*Bentley v. Bunton*, 94 S.W.3d 561, 605 (Tex. 2002) ...............................17

*Budd v. Gay*, 846 S.W.2d 521 (Tex. App.—Houston [14th Dist.] 1993, no writ) ..............................................................................14

*Burbage v. Burbage*, 2014 WL 4252274 (Tex. 2014)...............................19

*Cantu v. Seeman*, 2012 WL 1564536 (Tex. App.—Corpus Christi 2012, pet. denied) ................................................................14

*Christiansen v. Prezelski*, 782 S.W.2d 842 (Tex. 1990)............................9

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005).............................13

*CMM Grain Co., Inc. v. Ozgunduz*, 991 S.W.2d 437 (Tex. App.—Fort Worth 1999, no pet.) ......................................................10

*Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 844 S.W.2d 198 (Tex. 1992)..........................................................................25

*Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ......................................15

*Feldman v. Marks*, 960 S.W.2d 613 (Tex. 1996) .......................................9

*Gardner v. Baker & Botts, L.L.P.*, 6 S.W.3d 295 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ........................................10

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ...................................18

*Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387 (Tex. 1997) ...........23

*Hancock v. Variyam*, 400 S.W.3d 59 (Tex. 2013)..............................19, 23

*Harton v. First Victoria Nat'l Bank*, 2011 WL 1935605 (Tex. App.—Corpus Christi 2011, pet. denied) .............................................13

*Haut v. Green Cafe Mgmt., Inc.*, 376 S.W.3d 171 (Tex. App.—Houston [14th Dist.] 2012, no pet.)....................................................11

*In re B.J.H.–T.*, No. 12-09-00157-CV, 2011 Tex. App. LEXIS 1518 (Tex. App.—Tyler 2011, pet. denied)............................................................9

*In re D.T.C.*, No. 09-08-00388-CV, 2009 Tex. App. LEXIS 5451 (Tex. App.—Beaumont 2009, no pet.)..............................................................9

*In re Estate of Arrendell*, 213 S.W.3d 496 (Tex. App.—Texarkana 2006, no pet.)......................................................................................10

*In re Marriage of McKay*, 393 S.W.3d 346 (Tex. App.—Amarillo 2012, no pet.)........................................................................................9

*Jaramillo v. The Atchison, Topeka, & Santa Fe Ry. Co.*, 986 S.W.2d 701 (Tex. App.—Eastland 1998, no pet.) ...........................................10

*Luna v. Luna*, 2012 WL 1073377 (Tex. App.—Corpus Christi 2012, no pet.)..................................................................................................14

*Mason v. Our Lady Star of the Sea Catholic Church,* 154 S.W.3d 816 (Tex. App.—Houston [14th Dist.] 2005, no pet.)................................10

*Munden v. Reed*, 2003 WL 57751 (Tex. App.—Dallas 2003, no pet.) ...................10

*Ortegon v. Benavides*, No. 04-05-00768-CV, 2008 Tex. App. LEXIS 1576 (Tex. App.—San Antonio 2008, pet. denied) ...............................9

*Parkway Co. vs. Woodruff*, 901 S.W.2d 434 (Tex. 1995) ......................................20

*Richards v. Schion*, 969 S.W.2d 131 (Tex. App.—Houston [1st Dist.] 1998, no pet.)......................................................................................10

*Saenz v. Fidelity & Guaranty Insurance Underwriters*, 925 S.W.2d 607 (Tex. 1996) ....................................................................................19

*Salinas v. Kristensen*, No. 13-08-00110-CV, 2009 WL 4263107 (Tex. App.—Corpus Christi 2009, pet. denied) .............................................11

*Salinas v. Salinas*, 365 S.W.3d 318 (Tex. 2012) ..................................................19

*Sedona Pacific Housing P'ship v. Ventura*, 408 S.W.3d 507 (Tex. App.—El Paso 2013, no pet.)..................................................................9

*Service Corp. Int'l v. Guerra*, 348 S.W.3d 221 (Tex. 2011).................................22

*Servin v. Great W. Ins. Co.*, 2008 WL 723321 (Tex. App.—San Antonio 2008, no pet.)..................................................................10

*Stevens v. Nat'l Educ. Ctrs., Inc.*, 11 S.W.3d 185 (Tex. 2000) .............................20

*Synergy Mgmt. Grp., L.L.C. v. Thompson*, 398 S.W.3d 843 (Tex. App.—Eastland 2012, no pet.).........................................................17

*Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828 (Tex. 2009)..................13

*Tiller v. McLure*, 121 S.W.3d 709 (Tex. 2003) .......................................13

*Wal-Mart Stores, Inc. v. Cockrell*, 61 S.W.3d 774 (Tex. App.—Corpus Christi 2001, no pet.) ........................................................20

*Ward v. Baylor University*, No. 10-11-00066-CV, 2012 Tex. App. LEXIS 1437 (Tex. App.—Waco 2012, pet. denied)..............................9

*Watts v. Hancock*, No. 05-12-01635-CV, 2014 Tex. App. LEXIS 7898 (Tex. App.—Dallas 2014, no pet.)........................................9

*Williams Farms Produce Sales, Inc. v. R & G Produce Co.*, 443 S.W.3d 250 (Tex. App.—Corpus Christi 2014, no pet.) ......................................8

## Statutes

TEX. CIV. PRAC. & REM. CODE § 41.001(2)............................................24

## Rules

TEX. R. APP. P. 34.6(b)(1)..................................................................8

TEX. R. APP. P. 34.6(c)(1) .............................................................. 1, 10

TEX. R. APP. P. 35.3(b)...................................................................16

TEX. R. APP. P. 39.1.........................................................................x

TEX. R. CIV. P. 137............................................................... xi, 25, 26

TEX. R. CIV. P. 301................................................................ 13, 15

# RECORD CITATIONS

Citations to the clerk's record or supplemental clerk's record refer to the page number assigned by the district clerk, *e.g.*, "CR 1" or "CR Supp. 1." Citations to the reporter's record will refer to the volume number and page, *e.g.*, "1 RR 1."

## STATEMENT OF THE CASE

**Nature of the Case:** This appeal arises from assault and defamation claims filed by Douglas Bulthuis against Jose Avila concerning events that occurred in 2004. (CR 27) Avila originally filed a lawsuit against Bulthuis for defamation, regarding Bulthuis's statements that Avila assaulted him. (CR 19–21) Bulthuis filed counterclaims against Avila, alleging assault and defamation, and seeking actual and exemplary damages, as well as and attorneys' fees. (CR 27–29, 32–33)

**Trial Court:** The 370th Judicial District Court of Hidalgo County, Texas, the Hon. Noe Gonzalez presiding.

**Course of Proceedings:** After the trial court rendered summary judgment on Avila's claims, Bulthuis's claims were tried to a jury verdict in May 2012. (CR Supp. 35–49) At the conclusion of trial, the jury found Avila was liable for assault and defamation per se, found Bulthuis sustained no damages for the alleged assault, found Bulthuis sustained compensatory damages totaling $750,000 for defamation, and awarded exemplary damages of $100,000. (*Id*.) Avila filed a motion for judgment notwithstanding the verdict and argued the evidence was legally insufficient to support the jury's liability and damages findings. (CR Supp. 50–82) The trial court granted the motion for JNOV in part, entered a final judgment in favor of Bulthuis, but awarded Bulthuis only nominal damages of ten dollars. (CR 54–55) Bulthuis filed this appeal. (CR 62–63)

## STATEMENT REGARDING ORAL ARGUMENT

The record and the parties' briefs in this matter adequately set forth the reasons why this Court should affirm the trial court's judgment, and the legal and procedural issues presented are straightforward. As a result, Appellee Jose Avila does not believe oral argument will significantly aid the Court in considering the procedural issues involved in this matter and determining the legal issues raised herein. TEX. R. APP. P. 39.1. However, should this Court grant oral argument to Appellant Douglas Bulthuis, Appellee requests the opportunity to appear and present oral argument in response.

# ISSUES PRESENTED

1.  Bulthuis failed to present this Court with a complete reporters' record of the trial proceedings below, and failed to comply with TEX. R. APP. P. 34.6(c), which requires parties who present a partial record on appeal to file a statement of the points or issues to be presented on appeal. Here, Bulthuis presents this Court with a mere 20 pages of the hundreds of pages of his own testimony, from a trial that began May 17, 2012 and concluded 12 days later. The Texas Supreme Court and virtually every other Texas court of appeals have held that a party's failure to do so is fatal to issues addressing whether the evidence was sufficient to the jury findings. This Court must presume the omitted portions of the record support the trial court's rulings and must affirm its judgment in this matter.

2.  The trial court properly rendered a judgment notwithstanding the verdict in this matter, because the evidence was legally insufficient to support the jury awards of mental anguish and loss of reputation damages.

3.  In the absence of sufficient evidence of actual damages, the trial court properly rendered a judgment notwithstanding the verdict as to the jury's award of exemplary damages.

4.  The trial court properly determined that court costs were not taxable in this matter because Bulthuis recovered only nominal damages of ten dollars. *See* TEX. R. CIV. P. 137.

TO THE HONORABLE THIRTEENTH COURT OF APPEALS:

Appellee Jose Avila files this brief in response to the opening brief filed by Appellant Douglas Bulthuis and would respectfully show this Court as follows.

## PRELIMINARY STATEMENT

Bulthuis fails to give this Court any legitimate basis to overturn the trial court's judgment in this matter. His claims that this Court should reinstate the jury's damages awards are without merit. He presented no legally sufficient evidence supporting such awards at trial, and none appears in this appellate record. Were it not for the legal presumption of at least nominal damages that applies to cases of defamation per se, the trial court would have rendered judgment that Bulthuis take nothing. Moreover, Bulthuis's decision to present a mere fraction of the testimony from this multi-day trial—without giving the required notice of a limited appeal and a statement of the specific issues to be appealed—dooms his challenge of the trial court's judgment at the outset. In the absence of such notice and statement, this Court is required to presume the omitted portions of the trial record are relevant to the issues raised and support the lower court's judgment. *See* TEX. R. APP. P. 34.6(c)(1); *Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002).

As a result, this Court must summarily dispose of this appeal and affirm the trial court's judgment.

**STATEMENT OF FACTS**

In his request for the preparation of the reporter's record in this matter, Bulthuis asked the court reporter to include only the testimony of Aurora Villarreal in the record. (CR 64–65, 72–73) Also contained in the clerk's record are excerpts of Bulthuis's own trial testimony—a mere 20 pages of the hundreds of pages of his testimony recorded at trial—that were presented to the trial court by Avila as exhibits to post-trial motions and briefing. Consequently, the record on appeal is severely limited, and Avila will restrict his presentation of the facts to what is contained in the record before this Court.

**A.      The parties' claims and resulting lawsuit.**

This lawsuit arises from allegations of an altercation that allegedly occurred in 2004 and from subsequent actions allegedly stemming from that altercation. (CR 24–25, 32–33; CR Supp. 26–28) In his pleadings, Bulthuis contended that in January 2004, Avila threatened him while Bulthuis was attending a high school basketball game with his four-year-old son. (CR 24–25) Bulthuis further claimed that, in February 2004, Avila tortiously interfered with Bulthuis's employment contract with McAllen Independent School District (MISD) and intentionally inflicted emotional distress on Bulthuis. (CR 25)

In Avila's live petition, he alleged that in June 2006, Ruth Walters circulated an email and letters to citizens of McAllen, Texas, and students of McAllen High

2

School that accused Avila of attacking Bulthuis. (CR Supp. 26) The email and letters supposedly detailed the "facts" of the alleged assault and noted that the assault constituted a third-degree felony. (*Id.*) Mary Walters allegedly re-circulated the email and the letters to citizens of McAllen, Texas, and students of McAllen High School on her MySpace page and via email. (CR Supp. 27) Based on these allegations, Avila sued Ruth Walters, Mary Walters, and Bulthuis in March 2007, alleging claims of defamation and gross negligence. (CR 18–22) Avila sought damages for lost wages, emotional distress, and mental anguish, as well as punitive damages. (CR 21)

In June 2007, Bulthuis filed counterclaims against Avila, alleging that Avila assaulted and intentionally inflicted emotional distress on him. (CR 27–28) Bulthuis also claimed Avila tortiously interfered with Bulthuis's employment contract and filed a frivolous lawsuit against him. (CR 28–29) Bulthuis later supplemented his counterclaim with allegations that Avila made "false, scandalous and totally manufactured statements" about Bulthuis. (CR 32–33) Bulthuis's suit sought damages and attorneys' fees from Avila. (CR 27–29, 32–33)

**B.     A jury finds for Bulthuis and awards him $850,000 in damages.**

The claims in this matter were tried to a jury, beginning May 17, 2012, with the jury rendering its verdict 12 days later, on May 29, 2012. (CR Supp. 35–49, 50, 54) At trial, Bulthuis's defamation per se claims focused on Avila's alleged

publication of a statement by Beverly Bradburn to the MISD in which Bradburn accused Bulthuis of harassing and sexually assaulting her in 2003. (CR Supp. 52–53). Bulthuis is a teacher and coach at McAllen High School, and Bradburn was also a teacher at that school at the time. Bradburn made the statement to school district officials in 2008, as part of quasi-judicial proceedings. (CR Supp. 53)

Bulthuis testified at trial that Bradburn's allegations against him were false, and that he later learned that "other people in the community knew about these allegations." (CR Supp. 96) He claimed he pursued this lawsuit "to clear his name." (CR Supp. 116) Bulthuis testified that his wife heard the accusations against him, but "never doubted" him and that they have "a strong marriage." (CR Supp. 99) Bulthuis also testified that, when the school district investigated the allegations about his conduct, the allegations were "dismissed on no grounds." (CR Supp. 98) When asked whether the allegations had any effect on his employment status, Bulthuis testified that he remained employed with the MISD, was not demoted in any way, and continued to command the respect of his fellow coaches. (CR Supp. 103) Bulthuis explained that his relationship with his supervisor never deteriorated, he was never singled out or treated poorly, and he never lost his supervisor's respect. (CR Supp. 104) In fact, Bulthuis actually received a larger salary in 2012 than he had earned in 2003. (CR Supp. 105)

At the conclusion of trial, the trial court submitted Bulthuis's defamation per se and assault claims to the jury. (CR Supp. 35–49) The jury found that Avila knowingly, and with actual malice, made defamatory statements about Bulthuis's sexual misconduct. (CR Supp. 38–40, 42) The jury awarded Bulthuis damages totaling $750,000 for past and future injury to his reputation and past and future mental anguish, and it awarded Bulthuis $100,000 in exemplary damages. (CR Supp. 41, 43) The jury found that Avila maliciously assaulted Bulthuis, awarded Bulthuis no damages for his assault claim. (CR Supp. 44–47)

## C. The trial court concludes the evidence was legally insufficient to support the jury's damage awards.

On May 31, 2012, Bulthuis moved the trial court to render a final judgment based on the jury's findings. (CR 35–36) In response, Avila moved for judgment notwithstanding the verdict (JNOV) and argued that Bulthuis's defamation per se claim was based on statements that were not actionable as a matter of law and that the evidence was legally insufficient to support the jury's liability and damages findings. (CR Supp. 51–61) Avila also argued, in the alternative, that should the trial court conclude there was evidence to support the jury's liability findings, a JNOV on the damages findings was proper because the evidence presented at trial was legally insufficient to support the amounts of the awards determined by the jury. As a result, Avila suggested the trial court award Bulthuis only nominal damages. (CR Supp. 83–94)

5

The trial court signed its original final judgment December 3, 2012, and concluded that "it appears to the Court that judgment should be rendered, notwithstanding the verdict, in favor of Counter-Plaintiff DOUGLAS MICHAEL BULTHUIS, for nominal damages only." (CR 41) Bulthuis then asked the trial court to set aside its judgment and abate this proceeding, in light of the fact that several defamation cases were then pending before the Texas Supreme Court. (CR 43–47) Bulthuis requested that the court reconsider its ruling on Bulthuis's damages, but alternatively, that the court set aside its judgment and abate the case until the Texas Supreme Court ruled on those cases addressing damages in defamation per se cases. (CR 46) The trial court did so, and abated this matter pending the Texas Supreme Court's rulings. (CR 48) On September 28, 2013, the trial court signed its new final judgment, again granting Avila a JNOV on the jury's damages findings and awarding Bulthuis nominal damages against Avila. (CR 54–55) Bulthuis moved to modify the trial court's final judgment, which motion was not ruled on, and then filed a notice of appeal. (CR 56–63)

## SUMMARY OF THE ARGUMENT

Bulthuis pursued claims of defamation per se and assault against Avila in the trial court, arising from a shoving match between them and an allegation by one of Bulthuis's co-workers that was investigated and dismissed with no adverse finding or employment actions against Bulthuis. At trial, numerous witnesses testified over several days. Unlike the trial court, who presided over the entire trial and heard all the evidence, this Court is presented on appeal with a tiny fraction of the record—a mere 20 or so pages of Bulthuis's hundreds of pages of testimony. Because Bulthuis chose to request and file a partial record, this Court should follow its own precedent (and that of its sister courts) in presuming the omitted portions of the record support the trial court's judgment.

The trial court properly rendered a judgment notwithstanding the verdict in this matter. The evidence presented at trial (of which this Court has only a small part) did not support the jury's actual damages findings, which totaled $750,000. At closing argument in this matter, Buthuis's trial counsel even conceded that his client was content to recover only nominal damages from Avila for his claims— "[I]t's not about the money. . . . [I]f you believe that one dollar will stop him, fine." (CR Supp. 120) The trial court properly rendered a JNOV in this matter because Bulthuis did not carry his burden of proving mental anguish and loss of reputation damages, and its judgment should be affirmed.

**ARGUMENT**

## I. This Court must presume the omitted portions of the record support the trial court's judgment and must affirm that judgment.

In preparation for his appeal in this matter, Bulthuis requested that the court reporter prepare a reporter's record of the trial proceedings, but asked the court reporter to submit to this Court *only* the testimony of a single fact witness—school district employee Aurora Zamora. (CR 72-73; RR 4, 70) Zamora testified generally regarding the procedures followed by MISD when investigating incidents like those alleged by Bradburn, but she offered no specifics about the investigation of this particular alleged incident. (RR 68–69) Pursuant to Bulthuis's request, the court reporter submitted a record only of Zamora's trial testimony to this Court—a mere fraction of the entire trial evidence and testimony, which began May 17, 2012 and concluded May 29, 2012. (*See* CR 54)[1]

Texas Rule of Appellate Procedure 34.6 requires an appellant to designate the transcripts and exhibits to be included as the reporter's record. TEX. R. APP. P. 34.6(b)(1); *Williams Farms Produce Sales, Inc. v. R & G Produce Co.*, 443 S.W.3d 250, 257 (Tex. App.—Corpus Christi 2014, no pet.) ("The burden of providing a

---

[1] The court reporter's certification attests that the reporter's record:

> [C]ontains a true and correct transcription of *all portions of evidence and other proceedings requested in writing by counsel* for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

(RR 71, emphasis added)

record showing error requiring reversal is on the appellant."). In the absence of a complete reporter's record, an appellate court must presume that omitted portions of the record are relevant and support the trial court's judgment. *Bennett v. Cochran*, 96 S.W.3d 227, 228 (Tex. 2002); *Feldman v. Marks*, 960 S.W.2d 613, 614 (Tex. 1996); *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990).

This Court has expressly followed this line of cases. *See Williams Farms Produce Sales, Inc.*, 443 S.W.3d at 257 ("We must presume that any evidence that the appellant failed to designate for the record is sufficient to support the trial court's decision."). Virtually every other Texas appellate court has reached the same result under similar circumstances. *See, e.g., Watts v. Hancock*, No. 05-12-01635-CV, 2014 Tex. App. LEXIS 7898 (Tex. App.—Dallas 2014, no pet.); *Sedona Pacific Housing P'ship v. Ventura*, 408 S.W.3d 507, 514–15 (Tex. App.—El Paso 2013, no pet.); *In re Marriage of McKay*, 393 S.W.3d 346, 349–50 (Tex. App.—Amarillo 2012, no pet.); *Ward v. Baylor University*, No. 10-11-00066-CV, 2012 Tex. App. LEXIS 1437 (Tex. App.—Waco 2012, pet. denied); *In re B.J.H.–T.*, No. 12-09-00157-CV, 2011 Tex. App. LEXIS 1518 (Tex. App.—Tyler 2011, pet. denied); *In re D.T.C.*, No. 09-08-00388-CV, 2009 Tex. App. LEXIS 5451 (Tex. App.—Beaumont 2009, no pet.); *Ortegon v. Benavides*, No. 04-05-00768-CV, 2008 Tex. App. LEXIS 1576 (Tex. App.—San Antonio 2008, pet. denied); *In re Estate of Arrendell*, 213 S.W.3d 496, 503 (Tex. App.—Texarkana 2006, no

pet.); *Mason v. Our Lady Star of the Sea Catholic Church*, 154 S.W.3d 816, 819 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *CMM Grain Co., Inc. v. Ozgunduz*, 991 S.W.2d 437, (Tex. App.—Fort Worth 1999, no pet.); *Jaramillo v. The Atchison, Topeka, & Santa Fe Ry. Co.*, 986 S.W.2d 701, 702 (Tex. App.—Eastland 1998, no pet.); *Richards v. Schion*, 969 S.W.2d 131, 133 (Tex. App.—Houston [1st Dist.] 1998, no pet.). This Court should continue to follow and apply its own precedent, in keeping with its sister courts on this issue, and presume that the omitted portions of the trial record support the trial court's judgment.

Rule 34.6(c)(1) provides a limited exception to the rule requiring a complete record that does not apply here. "If the appellant requests a partial reporter's record, the appellant ***must*** include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues." TEX. R. APP. P. 34.6(c)(1) (emphasis added); *see Servin v. Great W. Ins. Co.*, 2008 WL 723321, at *3 (Tex. App.—San Antonio 2008, no pet.). "To effectuate the purpose of the rule, the statement of points must 'designate with reasonable particularity the complaints to be pursued on appeal.'" *Munden v. Reed,* 2003 WL 57751, at *2–3, (Tex. App.—Dallas 2003, no pet.); *see also Gardner v. Baker & Botts, L.L.P.*, 6 S.W.3d 295, 296 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). However, "strict compliance with Rule 34.6(c) is necessary to activate the presumption that omitted portions of the record are irrelevant." *Ozgunduz*, 991 S.W.2d at 439. In

10

fact, a "general statement identifying the portion of the judgment appealed from and declaring an intention to appeal that portion of the judgment is insufficient to satisfy the narrow purpose of Rule 34.6(c)." *Id.*

There is no dispute that Bulthuis failed to file any statement of points or issues along with his request for a partial reporter's record in this case, or anywhere else in the record. Bulthuis submitted two requests for the preparation of the partial reporter's record presented in this matter; neither contains any statement or designation of specific appellate issues. (CR 64, 72) Nor does Bulthuis's notice of appeal comply with the requirements of Rule 34.6. (CR 62) Where a party such as Bulthuis presents only a partial reporter's record and fails to file a "statement of the points or issues to be presented on appeal," Texas courts are required to, and will, presume that the omitted portions of the record support the trial court's judgment. *Bennett*, 96 S.W.3d at 229; *see also Haut v. Green Cafe Mgmt., Inc.*, 376 S.W.3d 171, 179–80 (Tex. App.—Houston [14th Dist.] 2012, no pet.). As a result, this Court must similarly presume that the missing portions of the record support the trial court's judgment. *Williams Farms Produce Sales, Inc.*, 443 S.W.3d at 257; *Salinas v. Kristensen*, No. 13-08-00110-CV, 2009 WL 4263107, at *3–4 (Tex. App.—Corpus Christi 2009, pet. denied).

Moreover, permitting Bulthuis to file a late statement of issues at this point—or more properly, to supplement the appellate record with a complete trial

11

transcript—would irreparably harm and prejudice Avila. Because neither the parties nor this Court have the benefit of a complete record of the trial testimony and evidence in this matter, Avila has not been afforded the opportunity to review and brief the significance of all of this evidence to this Court. As a result, Avila's appellate posture would be impaired were Bulthuis allowed to file a late statement of issues or supplemental reporter's record. Undoubtedly, both parties would be required to rebrief this case to support or respond to any late filed appellate issues and any supplemental trial record. Bulthuis elected to proceed on an incomplete record, and Avila has responded and addressed the merits of the record as it stands and urges the Court to apply the appropriate presumption in favor of the trial court's judgment. Permitting a late filed statement of issues or late record supplementation at this stage would not only restart this appeal at square one, it would go directly against the spirit of the rules of appellate procedure. The rules do not permit a party to wait for its opponent to point out the problems or deficiencies of its strategy, and then bring forward revised or additional appellate issues and portions of the record.

Accordingly, this Court must affirm the trial court's judgment.

## II. The trial court properly rendered a judgment notwithstanding the verdict on Bulthuis's damages claims.

Bulthuis claims the trial court erred in setting aside the jury's damages finding and in awarding him only nominal damages. In doing so, Bulthuis

12

misapplies the proper standard of review, attempts to shift the burden of proof to Avila, and ignores the absence of evidence in the appellate record.

In reviewing a trial court's JNOV, appellate courts conduct a legal-sufficiency analysis of the evidence—the same test a court would apply to an appellate no-evidence challenge. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). In applying the no-evidence standard, courts consider the evidence in the light most favorable to the jury's verdict and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). Courts will credit favorable evidence only if a reasonable juror could, and will disregard contrary evidence unless a reasonable juror could not. *Tanner*, 289 S.W.3d at 830. With regard to damages, a trial court may disregard a jury's verdict and render JNOV when no evidence supports the jury's damages findings. TEX. R. CIV. P. 301; *Tiller*, 121 S.W.3d at 713; *Harton v. First Victoria Nat'l Bank*, 2011 WL 1935605, at *5 (Tex. App.—Corpus Christi 2011, pet. denied).

### A.     Bulthuis cannot satisfy his burden to show the trial court erred in rendering a JNOV.

Bulthuis attempts to shift the burden to Avila to prove that the trial court's rendition of a JNOV in this matter was proper. But it is the appellant's burden of providing a record showing error that requires reversal. *Williams Farms Produce*

13

*Sales, Inc.*, 443 S.W.3d at 257–58 (citing *Appleton v. Appleton*, 76 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2002, no pet.)); *Budd v. Gay*, 846 S.W.2d 521, 523 (Tex. App.—Houston [14th Dist.] 1993, no writ) (concluding that without a sufficient record the appellate court cannot determine whether the trial court committed error); *see also Luna v. Luna*, 2012 WL 1073377, at *2 (Tex. App.—Corpus Christi 2012, no pet.). "If the appellant desires a reporter's record on appeal, he must request the court reporter to prepare the record and arrange for payment of the reporter's fee for doing so." *Cantu v. Seeman*, 2012 WL 1564536, at *5 (Tex. App.—Corpus Christi 2012, pet. denied).

As noted above, when the issues on appeal involve evidence omitted from the appellate record, appellate courts must presume the missing evidence will support the trial court's ruling. *Cantu*, 2012 WL 1564536 at *5. "Issues depending on the state of the evidence cannot be reviewed without a complete record, including the reporter's record . . . [and if] the appellant fails to bring forward a complete record, the court will conclude he has waived issues dependent on the state of the evidence." *Id.*

Here, Bulthuis challenges the trial court's decision to render judgment awarding him nominal damages for his defamation per se claim, arguing that the evidence at trial was legally sufficient to support the jury's damages awards. Considering this appellate issue requires a complete trial record in order for this

14

Court to review the sufficiency of the evidence presented. *See Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 502 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Without a complete record on appeal, Bulthuis cannot possibly meet his burden to show the trial court's rulings were error. Presuming that the missing portions of the reporter's record support the trial court's rulings, as this Court must do, this Court should overrule Bulthuis's issues and affirm the trial court's judgment. *See Haut*, 376 S.W.3d at 180–83; *Cantu*, 2012 WL 1564536 at \*5.

**B.     Bulthuis's claim that the trial court failed to consider the entire trial record not only confuses the rules but is plainly incorrect.**

Bulthuis suggests that the trial court erred in rendering a JNOV on his damages claims, in part, based on his contention that the court did not review the entire trial record when ruling on the motion. Bulthuis claims Avila "failed to present the entire record to the trial court," apparently based on a snippet of language lifted from the trial court's final judgment and on his belief that Avila was required to attach a full transcript of the entire trial, along with all admitted trial exhibits, to the motion for JNOV. Bulthuis's claims are entirely without merit.

Contrary to Bulthuis's argument, Avila was not required to provide the trial court with the entire trial transcript with his JNOV motion. Rule of Civil Procedure 301, which governs the filing of a JNOV, does not require that *any* record or evidence be attached to such motions. *See* TEX. R. CIV. P. 301. The Rule provides that:

15

> [U]pon *motion and reasonable notice* the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any jury finding on a question that has no support in the evidence.

*Id.* (emphasis added). Unlike the Rules of Appellate Procedure, which specifically require an appellant to request that a reporter's record be prepared, no such duty is placed on a movant filing a JNOV.[2] *See* TEX. R. APP. P. 35.3(b). Bulthuis's claims conflate the very different requirements of the Rules of Civil Procedure with those of the Rules of Appellate Procedure and should be wholly disregarded.

More importantly, the trial court presided over and did hear all the evidence presented during the trial and it did consider that evidence when ruling on Avila's JNOV motion. (*See* CR 54, noting that "[a]ll parties, by and through their respective counsel of record, presented argument and evidence at trial and then rested and closed.") The exhibits attached to Avila's JNOV motion consisted simply of excerpts of trial testimony offered to highlight arguments in the motion for the trial court's convenience. There was nothing actually attached to the JNOV motion (nor anything that could have been attached to the motion) that the trial court had not already heard for itself during the parties' lengthy trial. *See Synergy Mgmt. Grp., L.L.C. v. Thompson*, 398 S.W.3d 843, 846 (Tex. App.—Eastland

---

[2] If this were the case, every motion for JNOV or for new trial would be required to include a full trial transcript along with exhibits—items that court reporters usually do not have time to prepare within the deadlines for filing such motions—and would result in these motions essentially becoming "mini-appeals," a result the Rules obviously do not intend.

2012, no pet.) (holding that, in its analysis of JNOV issues, the court of appeals must consider "only the evidence that was admitted during the trial"). Consequently, as the presiding judge of the parties' trial, the trial court already had all the evidence before it necessary to consider and rule on Avila's JNOV motion. This Court should dismiss Bulthuis's argument to the contrary as a red herring.

## C. The evidence was legally insufficient to support the jury's actual damages findings.

Bulthuis claims the evidence he presented at trial—largely absent from this record—supports the jury's huge actual damage awards totaling $750,000. For the reasons explained above, this Court needs a complete record to review the trial court's decision in the context of all the evidence presented. Otherwise, this Court must defer to the trial court, who presided over the entire trial and heard all the evidence and testimony, and must presume that the omitted portions of the record support that court's rulings and final judgment. Moreover, the testimony Bulthuis cites for support fails to satisfy the evidentiary standards required to prove mental anguish and loss of reputation damages. (CR 95-113, 116)

### 1. Juries do not have unfettered discretion to award non-economic damages, even in defamation cases.

The Texas Supreme Court has explained that, in cases involving defamation per se, non-economic damages "cannot be determined by mathematical precision." *Bentley v. Bunton*, 94 S.W.3d 561, 605 (Tex. 2002). However, the fact that a jury

17

may be afforded some latitude in awarding such damages *"does not, of course, give it carte blanche to do whatever it will . . . ." Id.* (emphasis added). In *Gertz v. Robert Welch, Inc.*, the United States Supreme Court cautioned lower courts against upholding jury verdicts in defamation per se cases when the damage awards are unsupported by the evidence. 418 U.S. 323, 349–50 (1974). The Court expressed its concern that "the largely uncontrolled discretion of juries to award damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms." *Id.* at 349. In that case, the Court also expressed the same concern regarding awards of punitive damages. *Id.* at 350.

Echoing the United States Supreme Court's concerns, the Texas Supreme Court has held that "the First Amendment requires appellate review of amounts awarded for non-economic damages in defamation cases to ensure that any recovery **only compensates the plaintiff for actual injuries** and is not a disguised disapproval of the defendant." *Bentley*, 94 S.W.3d at 605. As the Court explained:

> The latitude necessarily accorded a jury in assessing non-economic damages does not insulate its verdict from appellate review for evidentiary support. Just as a jury's prerogative of assessing the credibility of evidence does not authorize it to find liability when there is no supporting evidence or no liability in the face of unimpeachable evidence, **so a large amount of mental anguish damages cannot survive appellate review if there is no evidence to support it** . . . . The jury is bound by the evidence in awarding damages, just as it is bound by the law.

18

*Id.* at 605-06 (emphasis added). In *Saenz v. Fidelity & Guaranty Insurance Underwriters*, the Texas Supreme Court further explained the limits on a jury's ability to award non-economic damages:

> Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the **amount** awarded. . . . . While the impossibility of any exact evaluation of mental anguish requires that juries be given a measure of discretion in finding damages, that discretion is limited. **Juries cannot simply pick a number and put it in the blank**. They must find an amount that, in the standard language of the jury charge, "would fairly and reasonably compensate" for the loss. Compensation can only be for mental anguish that causes "substantial disruption in . . . daily routine" or "a high degree of mental pain and distress." There must be evidence that the amount found is fair and reasonable compensation, just as there must be evidence to support any other jury finding.

925 S.W.2d 607, 614 (Tex. 1996) (emphasis added) (citations omitted).

The Texas Supreme Court recently explained that "Texas law presumes that defamatory per se statements cause reputational harm and entitle a plaintiff to general damages such as loss of reputation and mental anguish." *Burbage v. Burbage*, 2014 WL 4252274, at *8 (Tex. 2014) (citing *Bentley,* 94 S.W.3d at 604). But that Court has repeatedly held that this presumption yields **only** nominal damages. *Id.* (citing *Salinas v. Salinas,* 365 S.W.3d 318, 320 (Tex. 2012) (per curiam)). To award a plaintiff anything beyond nominal damages, courts must review presumed damages for evidentiary support. *Id.*; *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013).

19

**2. There is no evidence to support the jury's findings of mental anguish and loss of reputation damages.**

The Texas Supreme Court has consistently explained that recovering mental anguish damages requires evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. *See Stevens v. Nat'l Educ. Ctrs., Inc.*, 11 S.W.3d 185, 185 (Tex. 2000); *Wal-Mart Stores, Inc. v. Cockrell*, 61 S.W.3d 774, 779 (Tex. App.—Corpus Christi 2001, no pet.) ("To recover for mental anguish a plaintiff must offer direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine, or other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger.") (internal quotations omitted). For example, in *Parkway Co. vs. Woodruff*, 901 S.W.2d 434 (Tex. 1995), the Court examined the claimants' testimony regarding their alleged mental anguish, and found it was insufficient to support an award of such damages. Specifically, the Court held that evidence showing the claimants had experienced anger, frustration, and vexation, were legally insufficient to support a reasonable conclusion that their emotions rose to the level of compensable mental anguish. *Id*.

Here, there is no evidence to support the jury's findings that Bulthuis was entitled to past and future mental anguish damages or the jury's specific damage awards. Bulthuis claims the few pages contained in the clerk's record support his

20

claims of mental anguish because he testified that the allegations against him affected him "a lot," were "disturbing," upset his wife, and hurt him. However, Bulthuis also testified that his wife "never doubted" him and that they have "a strong marriage." (CR Supp. 99) There is nothing in the record, and in fact, no evidence was presented at trial to support the jury's findings that Bulthuis sustained mental anguish damages in the past in the amount of $250,000, or that he is likely to sustain such damages in the future in the amount of $100,000. In fact, Bulthuis's counsel admitted that he likely would sustain no future mental anguish whatsoever, and encouraged the jury to award nothing for this element. (CR Supp. 119) Most of Bulthuis's trial testimony regarding mental anguish damages focused on a disputed 2004 incident in which he claimed Avila assaulted him—and the jury found Bulthuis sustained no damages arising from that incident. Bulthuis testified that he had "problems with lack of sleep," but attributed that to the 2004 alleged assault and not the alleged defamation. Throughout the trial, Bulthuis simply asked the jurors to award him mental anguish damages in whatever amount "they feel are appropriate" for his defamation claims. His request, and the jury's damage awards for past and future mental anguish, are directly contrary to the Texas Supreme Court's precedent concerning non-economic damages generally and defamation per se claims specifically. *See Service Corp. Int'l v. Guerra*, 348 S.W.3d 221, 231–

21

32 (Tex. 2011) ("[G]eneralized, conclusory descriptions of how an event affected a person are insufficient evidence on which to base mental anguish damages.").

Similarly, there was no evidence presented (and there is no evidence in this record) to support the jury's findings that Bulthuis sustained, or will continue to sustain in the future, any actual injury to his reputation, much less injuries in the amounts of damages found by the jury. Bulthuis presented no evidence at trial that, after Avila's alleged publication of Beverly Bradburn's 2008 statement, Bulthuis's relationship with the three persons to whom the oral statements were allegedly made ever deteriorated. Bulthuis testified that the allegations were "about a very disturbing subject," were false, and that he later learned that "other people in the community knew about these allegations." But he also admitted that, when Bradburn's allegations about his conduct were investigated by the school district, he was quickly cleared of any wrongdoing. (CR Supp. 98) Bulthuis expressed concern that his friend, Charlie Vaughn, might have some doubt about whether Bradburn's accusations were true, but no evidence was presented to confirm this speculation, and Vaughn himself did not testify. (CR Supp. 86) But Bulthuis also admitted that he suffered no loss of respect from his coaching colleagues, that his reputation and salary at McAllen High School were not negatively affected by the alleged defamation, and that his coaching assignments and duties remained the same as before. (CR Supp. 103) Bulthuis also testified that his relationship with his

22

supervisor never deteriorated, he was never singled out or treated poorly, and he never lost his supervisor's respect. (CR Supp. 104) In fact, Bulthuis actually earned a larger salary in 2012 than he had in 2003. (CR Supp. 105) No testimony was presented from any persons that their opinion of Bulthuis's reputation or character was, in fact, negatively affected by the alleged defamation, a jury may not reasonably infer an ultimate fact from "meager circumstantial evidence which could give rise to any number of inferences, none more probable than another." *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997). In other words, there was no evidence to support the jury's findings that Bulthuis's reputation was injured to the point of awarding any more than nominal damages. The testimony regarding this event was just the opposite. In fact, Bulthuis even testified, at his counsel's prompting, that he was not required to prove he sustained *any* damages to his reputation.

In contrast to the evidence presented here, this Court should consider the evidence presented in *Hancock v. Variyam*, 400 S.W.3d 59 (Tex. 2013), another case involving claims of defamation per se. There, the jury awarded damages for mental anguish and loss of reputation—which together totaled a mere $90,000— based on evidence that the plaintiff was "devastated" and "very distraught" by the defendant's written defamatory statements, that his family life was severely disrupted, and that he became paranoid, lost sleep, and sought professional

counseling. *Id.* at 69–70. In addition, the plaintiff in *Hancock* testified that the defamatory statements were published to his professional colleagues and that he was demoted as a result of them. *Id.* Nonetheless, the Texas Supreme Court held the evidence was legally insufficient to support the jury's mental anguish and loss of reputation awards, and rendered judgment that the plaintiff take nothing. *Id.*

Bulthuis presented no such evidence in this case. Notably, in closing argument, Bulthuis's counsel downplayed any justification for an award of actual damages, emphasizing that "one dollar" would be sufficient. (CR Supp. 120) Here, the trial court properly rendered judgment notwithstanding the verdict on Bulthuis's actual damages claims because he failed to prove at trial that he had sustained anything more.

Accordingly, this Court should affirm the trial court's judgment.

## III. The trial court properly disregarded the jury's award of exemplary damages because Bulthuis did not recover actual damages in this matter.

Texas law requires that any finding of malice and any award of punitive damages must both be supported by clear and convincing evidence, a higher evidentiary burden than a preponderance of the evidence. *See* TEX. CIV. PRAC. & REM. CODE § 41.001(2). A finding of malice cannot be upheld in the absence of clear and convincing evidence that a tortfeasor specifically intended to cause "substantial injury or harm" to a claimant—which requires proof of more than

24

merely perceived or insignificant injury. *Bennett v. Reynolds*, 315 S.W.3d 867, 872 (Tex. 2010). No evidence was presented at trial to support a finding of malice in this case in satisfaction of this elevated standard of proof.

But exemplary damages are also not available unless a plaintiff first establishes his entitlement to actual damages. *Hancock*, 400 S.W.3d at 71. Here, the trial court determined there was no evidence to support the jury's awards of actual damages. (CR 54–55) As a result, the trial court properly disregarded the jury's exemplary damages award.

## IV. The trial court properly declined to tax Bulthuis's court costs against Avila because Bulthuis recovered only nominal damages.

Finally, Bulthuis claims the trial court erred in refusing to award his taxable court costs, even though he was the prevailing party at trial. However, Bulthuis acknowledges the Texas Rules of Civil Procedure provide that "[i]n civil actions for . . . defamation of character, if the verdict or judgment shall be for the plaintiff, but for less than twenty dollars, the plaintiff ***shall not recover*** his costs, but each party shall be taxed with the costs incurred by him in such suit." TEX. R. CIV. P. 137 (emphasis added); *see Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 210 (Tex. 1992) (recognizing application of Rule 137). Here, because the trial court's final judgment awards Bulthuis nominal damages of "less than twenty dollars," the trial court did not err in declining to tax Bulthuis's court costs against Avila in this matter, and in choosing to follow Rule 137's mandate for

25

cases like this one. *See* TEX. R. CIV. P. 137.

Accordingly, the trial court's determination that "all parties shall bear their own taxable court costs" is not an abuse of discretion, and this Court should affirm the trial court's ruling.

## CONCLUSION AND PRAYER

For all of the reasons set forth herein, Appellee Jose Avila respectfully requests that this Court affirm the trial court's judgment in all respects.

Respectfully submitted,

/s/ *R. Russell Hollenbeck*
R. Russell Hollenbeck
State Bar No. 00790901
hollenbeck@wrightclose.com
Natasha N. Taylor
State Bar No. 24071117
taylor@wrightclose.com
**WRIGHT & CLOSE, LLP**
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (fax)

Francisco Rene Villarreal
State Bar No. 00789706
**GARCIA & VILLARREAL, L.L.P.**
4311 North McColl Road
McAllen, Texas 78502
956-630-0081
956-630-3631 Facsimile
panchov@gvlaw.net

**COUNSEL FOR APPELLEE,
JOSE AVILA**

26

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief is in compliance with Texas Rule of Appellate Procedure 9.4 because it contains 6,364 words and has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font for text and 12-point Times New Roman font for footnotes, which meets the typeface requirements.

/s/ *Natasha N. Taylor*
Natasha N. Taylor

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing document has been served electronically on this 14th day of January 2015:

Ronald G. Hole
**HOLE & ALVAREZ, L.L.P.**
P.O. Box 720547
McAllen, Texas 78504-0547
956-631-2891
956-631-2415 Facsimile
mail@holealvarez.com

*Counsel for Appellant,*
*Douglas Bulthuis*

/s/ *Natasha N. Taylor*
Natasha N. Taylor

# APPENDIX

1. Charge of the Court

2. Final Judgment

CAUSE NO. C-620-07-G

**FILED**

AT_/0:30_O'CLOCK___A___M

MAY 2 9 2012

LAURA HINOJOSA, DISTRICT CLERK
District Courts, Hidalgo County
By_____Deputy

| DOUGLAS MICHAEL BULTHUIS | § | IN THE DISTRICT COURT |
| *Defendant / Counter-Plaintiff* | § | |
| | § | |
| VS. | § | 370TH JUDICIAL DISTRICT |
| | § | |
| JOSE JUAN (J.J.) AVILA | § | |
| *Plaintiff / Counter-Defendant* | § | HIDALGO COUNTY, TEXAS |

## CHARGE OF THE COURT

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Here are the instructions for answering the questions.

1.  Do not let bias, prejudice, or sympathy play any part in your decision.

2.  Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3.  You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4.  If my instructions use a word in any way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.  All the questions and answers are important. No one should say that any question or answer is not important.

35

6.    Answer "yes" or "no" to all questions unless you are told otherwise.  A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise.  Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case.  If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no."  A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence.  For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7.    Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision.  Answer each question carefully without considering who will win.  Do not discuss or consider the effect your answers will have.

8.    Do not answer questions by drawing straws or by any method of chance.

9.    Some questions might ask you for a dollar amount.  Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10.   Do not trade your answers.  For example, do not say, "I will answer this question your way if you answer another question my way."

11.   Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors.  The same 10 jurors must agree on every answer.  Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again.  This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial.  If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

## QUESTION NO. 1

Did Jose Juan (J.J.) Avila publish or cause to be published, through his actions, statements or conduct, defamatory statements regarding Douglas M. Bulthuis?

"Publish" means communicated to a third person capable of understanding its defamatory import and in a manner that the third person understands.

"Defamatory" means an ordinary person would interpret the statement in a way that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach the person's honesty, integrity, virtue, or reputation.

In deciding whether a statement is defamatory, you must construe the statement as a whole and in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it.

Answer "Yes" or "No."


Answer: ___Yes___

**If you have answered Question No. 1 "Yes," then answer Question Nos. 2, 3 and 4. Otherwise, do not answer Questions Nos. 2, 3 and 4.**

## QUESTION NO. 2

Were the statements made by Jose Juan (J.J.) Avila concerning sexual misconduct on the part of Douglas M. Bulthuis, false at the time they were made as it related to Douglas M. Bulthuis?

"False" means that a statement is not literally true or not substantially true. A statement is not "substantially true" if, in the mind of the average person, the gist of the statement is more damaging to the person affected by it than a literally true statement would have been.

Answer "Yes" or "No"   _Yes_

**If you have answered Question No. 2 "Yes," then answer Question No. 3, otherwise do not answer Question Nos. 3.**

## QUESTION NO. 3

Did Jose Juan (J.J.) Avila know or should have known, in the exercise of ordinary care, that the statements he made and the letters he published referred to in Question Nos. 1 and 2, were false and had the potential to be defamatory?

"Ordinary care" concerning the truth of the statement and its potential to be defamatory means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Answer "Yes" or "No"    ___Yes___

**If you have answered Question No. 1 "Yes," then answer Question No. 4. Otherwise, do not answer Question No. 4, 5 and 6.**

## QUESTION NO. 4

What sum of money, if paid now in cash, would fairly and reasonably compensate Douglas Michael Bulthuis for his injuries, if any, that were proximately caused by the conduct found by you in answer to Question 1?

You are instructed that under the law, the statements made were defamatory *per se*, and as such, our law presumes that such statements injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation and mental anguish. You are instructed that you must award at least nominal damages.

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollars and cents, for damages, if any, sustained by Douglas M. Bulthuis.

    a.    Injury to reputation sustained in the past.

Answer: $250,000

    b.    Injury to reputation that, in reasonable probability, Douglas Michael Bulthuis will sustain in the future.

Answer: $150,000

    c.    Mental anguish sustained in the past.

Answer: $250,000

    d.    Mental anguish that, in reasonable probability, Douglas Michael Bulthuis will sustain in the future.

Answer: $100,000

**If you inserted a sum of money in any of the blanks in Question No. 4, then answer Question No. 5. Otherwise, do not answer Question Nos. 5 & 6.**

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of 10 or more jurors. Otherwise, you must not answer the following question.

## QUESTION NO. 5

Do you find from clear and convincing evidence that such defamatory statements made by Jose Juan (J.J.) Avila were made with actual malice?

"Malice" means – a specific intent by Jose Juan (J.J.) Avila to cause substantial injury or harm to Douglas M. Bulthuis.

"Clear and convincing evidence" is that measure or degree of proof that will produce in the mind of the jury a firm belief or conviction as to the truth of the allegations sought to be established.

Answer "Yes" or "No"    _Yes_

If you unanimously answered "Yes" to Question No. 5, then answer Question No. 6. Otherwise, do not answer Question No. 6.


## QUESTION NO. 6

You are instructed that, in order for you to find exemplary damages, your answer to the question regarding the amount of such damages [this Question] must be unanimous.

What sum of money, if any, should be assessed against Jose Juan (JJ) Avila and awarded to Douglas M. Bulthuis as exemplary damages for the conduct found in Question No. 5?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages includes punitive damages.

Factors to consider in awarding exemplary damages, if any, are –

      a.     The nature of the wrong.

      b.     The character of the conduct involved.

      c.     The degree of culpability of Jose Juan (J.J.) Avila.

      d.     The situation and sensibilities of the parties concerned.

      e.     The extent to which such conduct offends a public sense of justice and propriety.

      f.     The net worth of Jose Juan (J.J.) Avila.

Answer in dollars and cents for damages, if any.


Answer: _$100,000_

## QUESTION NO. 7

Did Jose Juan (J.J.) Avila commit an assault against Douglas M. Bulthuis?

> A person commits an assault if he (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens another with imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another when he or she knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Answer "Yes" or "No."

Answer: __Yes__

**If you answered "Yes" to Question No. 7, then answer Question No. 8. Otherwise, do not answer Question Nos. 8, 9 or 10.**

## QUESTION NO. 8

What sum of money, if paid now in cash, would fairly and reasonably compensate Douglas Michael Bulthuis for physical pain and mental anguish in the past, if any, resulting from the occurrence found by you in answer to Question 7?

Answer, in dollars and cents, for damages, if any.

Answer: ___$0_____

**If you answered "Yes" to Question No. 7, then answer Question No. 9. Otherwise, do not answer Question Nos. 9 & 10.**

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of 10 or more jurors. Otherwise, you must not answer the following question.

## QUESTION NO. 9

Do you find from clear and convincing evidence that the assault found by you in Question No. 7 was committed by Jose Juan (J.J.) Avila with malice?

"Malice" means – a specific intent by Jose Juan (J.J.) Avila to cause substantial injury or harm to Douglas M. Bulthuis.

"Clear and convincing evidence" is that measure or degree of proof that will produce in the mind of the jury a firm belief or conviction as to the truth of the allegations sought to be established.

Answer "Yes" or "No"      _Yes_

If you unanimously answered "Yes" to Question No. 9, then answer Question No. 10. Otherwise, do not answer Question No. 10.

## QUESTION NO. 10

You are instructed that, in order for you to find exemplary damages, your answer to the question regarding the amount of such damages [this Question] must be unanimous.

What sum of money, if any, should be assessed against Jose Juan (JJ) Avila and awarded to Douglas M. Bulthuis as exemplary damages for the conduct found in Question No. 7?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages includes punitive damages.

Factors to consider in awarding exemplary damages, if any, are –

a. The nature of the wrong.

b. The character of the conduct involved.

c. The degree of culpability of Jose Juan (J.J.) Avila.

d. The situation and sensibilities of the parties concerned.

e. The extent to which such conduct offends a public sense of justice and propriety.

f. The net worth of Jose Juan (J.J.) Avila.

Answer in dollars and cents for damages, if any.

Answer: _$ 0_

**Presiding Juror:**

1.  When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2.  The presiding juror has these duties:

    a.  have the complete charge read aloud if it will be helpful to your deliberations;
    b.  preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;
    a.  give written questions or comments to the bailiff who will give them to the judge;
    b.  write down the answers you agree on;
    c.  get the signatures for the verdict certificate; and
    f.  notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

**Instructions for Signing the Verdict Certificate:**

1.  You may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2.  If 10 jurors agree on every answer, those 10 jurors sign the verdict.
    If 11 jurors agree on every answer, those 11 jurors sign the verdict.
    If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3.  All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

_____
Hon. Noe Gonzalez
Judge Presiding

**Signed this** _29th_ **day of May, 2012**                **Time:** _10:30 AM_

## VERDICT CERTIFICATE

Check one:

✓ Our verdict is unanimous. All 12 of us have agreed to each and every answer. The presiding juror has signed the certificate for all 12 of us.

_____          _Claudia Cavazos_____
Signature of Presiding Juror                        Printed Name of Presiding Juror


_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.


_____ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.


SIGNATURE                                    PRINTED NAME

1. _____          _Claudia Cavazos_____

2. _____          _____

3. _____          _____

4. _____          _____

5. _____          _____

6. _____          _____

7. _____          _____

8. _____          _____

9. _____          _____

10. _____          _____

11. _____          _____

2:26 pm LMK

CAUSE NO. C-620-07-G

| DOUGLAS MICHAEL BULTHUIS, | § | IN THE DISTRICT COURT |
|---|---|---|
| *Defendant/Counter-Plaintiff* | § | |
| | § | |
| V. | § | 370TH JUDICIAL DISTRICT |
| | § | |
| JOSE JUAN (J.J.) AVILA, | § | |
| *Plaintiff/Counter-Defendant* | § | HIDALGO COUNTY, TEXAS |

## FINAL JUDGMENT

BE IT REMEMBERED that on May 17, 2012 came on to be heard the above-entitled and numbered cause, wherein DOUGLAS MICHAEL BULTHUIS is a Counter-Plaintiff, and JOSE JUAN (J.J.) AVILA is a Counter-Defendant. All parties appeared in person and by and through their respective counsel of record announced ready for trial. All parties having announced ready for trial, and a jury having been previously demanded, a jury consisting of twelve (12) good and lawful jurors was duly selected, impaneled, and sworn.

All parties, by and through their respective counsel of record, presented argument and evidence at trial and then rested and closed. This Court prepared and submitted its Charge to the jury and submitted this cause to the jury on May 29, 2012. The jury returned into open Court its verdict, which was in favor of Counter-Plaintiff DOUGLAS MICHAEL BULTHUIS. The jury's verdict was received and was ordered filed among the papers of this cause.

Based upon the Court's consideration of the verdict and the post-verdict briefing, exhibits, and arguments submitted by the parties, it appears to the Court that judgment should be rendered, notwithstanding the verdict, in favor of Counter-Plaintiff DOUGLAS MICHAEL BULTHUIS, for nominal damages only.

54



It is therefore, ORDERED, ADJUDGED, and DECREED, that Counter-Plaintiff DOUGLAS MICHAEL BULTHUIS recover of and from Counter-Defendant JOSE JUAN (J.J.) AVILA nominal damages in the amount of ten dollars ($10.00).

It is further ORDERED, ADJUDGED, and DECREED that all parties shall bear their own taxable court costs. *See* TEX. R. CIV. P. 137.

All other relief not expressly granted herein is DENIED. This is a final appealable judgment and disposes of all parties and all claims.

SIGNED this 18ᵗʰ day of September, 2013.

_____
HONORABLE NOE GONZALEZ
Presiding Judge

2